Owens *v.* Ranstead.

OWEN OWENS, Appellant, *v.* BUSHROD W. RANSTEAD, Appellee.

APPEAL FROM KANE.

The rule that equity will not relieve against the neglect of a party in a suit at law, who has not made a proper defense, or to move for a new trial, will depend upon the fact, that he knowingly had a day in court.

The return of an officer to a writ, is only *prima facie* evidence of the facts stated by it, in a proper case made, equity will relieve against the effects of it. The remedy by action against the officer, for a false return, is not always an adequate remedy.

A judgment obtained by means of a false return and without any notice to the defendant, may be relieved against, in equity.

A Circuit Court has not the right to prevent a party from offering oral evidence, in a chancery case.

The rules and orders of a court regulating practice, should be placed upon the records of the court. Rules of court cannot rest in parol ; nor can any discretion in the application of them be exercised, unless such discretion is authorized by the rules themselves.

Rules of court should have a reasonable publicity, and should only operate prospectively.

THE pleadings and facts in this case are fully stated in the opinion of the court.

The decree of the Circuit Court was rendered by I. G. WILSON, Judge, at May term, 1858, of the Kane Circuit Court.

W. B. PLATO, and B. C. COOK, for Appellant.

EASTMAN, BEVERIDGE & BARRY, for Appellee.

BREESE, J. The power of a court of chancery to afford relief, in a case like this, properly made out, cannot be questioned, but it must appear to the court that the party complaining has been guilty of no laches on his part, and that he has been deprived of the opportunity of asserting his rights or making his defense through some accident, fraud or mistake, not of his own procurement, and, to which he was not a willing party, for a party has no claim to come into a court of equity to ask to be saved from his own culpable misconduct.

It is well settled, as a general rule, that equity will not relieve against mispleading, or the inattention of parties in a court of law, as by neglecting a proper defense, or to move for a new trial in proper time. 1 Mad. Ch. 77. The second branch of this rule must be understood with this qualification, that the party had, knowingly, a day in court, otherwise the greatest injustice might be done.

These general principles being stated, the question is, has the appellant brought himself and his case within them.

Complainant states in his bill of complaint, that at the November term, A. D. 1857, of the Kane County Circuit Court, Bushrod W. Ranstead, recovered a judgment by default againt him, for the sum of eight hundred dollars and costs—that neither the complainant or any attorney for him, appeared in said proceedings—that he had no knowledge or information whatever of the pendency of any such suit, nor of the rendition of such judgment, until after the final adjournment of the court.

That the judgment is unjust and inequitable, and wrongfully obtained, because the complainant had no knowledge or information of the pendency of any such suit or proceedings, and was not, nor is he now, indebted to Ranstead in any amount whatever.

That the declaration filed in the suit by Ranstead against complainant, was for money lent and advanced, money paid, laid out and expended, money had and received for goods, wares and merchandise sold, etc., labor and services, balance due on account stated, and for interest due; that all such claims or demands are utterly false and fictitious.

That upon the summons issued in the suit, there is a return made by Jonathan Kimball, as deputy sheriff, of service on the

complainant, which return is utterly untrue, unless the complainant misunderstood Kimball at the time of delivering him a paper as hereinafter stated.

That the only indebtedness the complainant ever incurred by reason of any dealing with said Ranstead, and for which he was ever indebted to him, at any time, is as follows, viz: On the 2nd day of October, A. D. 1855, the complainant purchased of the defendant a farm in Kane county, for the sum of $4,700, that he paid down $300, and executed to said Ranstead or order his promissory notes for the balance as follows, to wit: One for $1,000, due March 1st, 1856, which was fully paid and taken up by complainant on or before September 1st, 1856. One note for $400, due June 1st, 1856, paid and taken up by complainant on the 18th day of December, 1855. One note for $1,500, due March 1st, 1857, which was sold and transferred by Ranstead, to one William B. West, upon which the complainant paid about $1,170, and for the balance, said West obtained a judgment against complainant. And one note for $1,500, due March 1st, 1858, which has also been sold and transferred by Ranstead to said West; that the complainant executed to Ranstead a mortgage on the farm to secure the payment of the notes.

That some time in the month of October last, Kimball called upon the complainant and read him a paper, which the complainant understood to be a summons from the Circuit Court, and at the same time handed complainant a paper, purporting to be a copy of a declaration—a copy of which is hereto attached.

That the complainant is a laboring man, and unacquainted with such matters, and took the papers from Kimball without comprehending anything about it.

That the complainant read it after Kimball had gone, and understanding from that, that West had sued him for the balance due on the note, he then supposed, and still does, that the paper then read to him was the summons issued in that case—that having no defense to West's note, he took no counsel in the matter, and paid no attention to it further than to prepare and pay the judgment, which he supposed West would obtain against him.

That some time after the default was taken in the suit, Ranstead produced a young man named Charles E. Norton, as a witness, who came from Chicago with Ranstead, who testified to having heard complainant make some admissions of indebtedness to Ranstead, but at what time or place, complainant is not informed.

That if Norton or any other witness testified to any indebtedness other than the notes, due from complainant to defendant,

such testimony was and is utterly false, as could be made apparent upon an examination of such witness in court.

Complainant expressly charges that he is not, nor was he, indebted to Ranstead in any sum whatever at the time the judgment was obtained, which fact was well known to Ranstead.

That complainant would have employed counsel and defended the suit, and prevented any judgment being rendered against him for any amount by Ranstead, had he known or had the slightest information of the pendency of the suit against him.

Complainant charges that if the summons was served upon him, as the return thereon states, it was done at a time, and in such a manner, either by design or accident, as to deceive and mislead him, and therefore that the judgment was fraudulently or wrongfully obtained, without any negligence or want of diligence on his part; and that the complainant will suffer great wrong and injustice, if the judgment is allowed to be enforced and collected.

That Ranstead resides in Chicago, and complainant has not been able to see him since the rendition of the judgment.

That Ranstead has caused an execution to be issued on the judgment and placed in the hands of the sheriff of Kane county, with instructions to proceed immediately with the collection of the same, unless restrained by injunction, all of which actings and doings are contrary to equity, etc.

Prayer for answer of defendant without oath to bill of complaint, and that the judgment against the complainant may be vacated and set aside, and that Ranstead be perpetually enjoined from collecting or attempting to collect it, or that the judgment and all proceedings in the case subsequent to the filing of the declaration may be set aside, and complainant allowed to plead to and defend the suit, and for such other and further relief, etc.; and that Ranstead and the sheriff may be restrained from further proceeding to enforce the judgment; that complainant may have such writ of injunction, and also the usual writ of summons against defendant.

The bill is sworn to before the clerk of the Circuit Court.

The exhibit attached to the bill, was the declaration filed September 11th, 1857, in the name of William B. West, by Mayborne & Smith, his attorneys, in vacation after May term, 1857, and against complainant.

This declaration contains one special count on a promissory note, for $1,500, dated October 2nd, 1855, payable on the 1st day of March, A. D. 1857, to B. W. Ranstead or order, and by him assigned to William B. West. Declaration also contains the "common counts," with a notice to the defendant that the note declared on is the plaintiff's only cause of action.

On this bill an injunction was ordered, and on the 21st January, 1858, the defendant filed his answer, admitting that defendant recovered a judgment at the time and for the amount charged in the bill, but denies that the complainant had no notice of the pendency of the suit, and avers that summons was duly served more than ten days prior to the 1st day of the November term of said court for A. D. 1857. That such summons was twice read to the complainant by the deputy sheriff, and its nature fully explained. As to whether any other summons was served upon the complainant, defendant is not advised, etc.

Answer admits, that the declaration in the suit is substantially stated in the bill, but denies that the allegations in the declaration were false, but avers the same to be true and *bona fide.*

Answer admits the return on the summons as stated in the bill, but denies that such return is false, but avers the same to be true, and denies that the complainant misunderstood Kimball when such service was made.

Answer denies that the only dealings ever had between the parties to the bill were as therein stated. Admits the transactions stated in the bill are true so far as stated, and denies that such transactions are all ever had between complainant and defendant, but on the contrary avers that defendant has negotiated loans for the complainant, from time to time, for large amounts, for which complainant agreed to pay defendant large sums of money. Also, that defendant advanced large sums of money at various times for complainant at his request, all of which complainant agreed to pay defendant, but has wholly neglected so to do, though often requested.

Answer also states that defendant has expended a large amount of time, and trouble of mind and body, in and about the business of complainant, and at his request. That there is a large amount due between the parties on account stated, at the date of the commencement of the suit at law referred to in bill of complaint. That in the spring of 1857, the parties accounted together and a balance was struck, and a witness called to such settlement, to wit, Charles E. Norton, whose affidavit is hereto attached. As to the deputy sheriff's reading a declaration to complainant, defendant is not informed save from the bill, but denies that the complainant did not understand the summons in the suit, as it was repeatedly read to him, as before stated.

Answer admits that about ten days after default was taken in the suit, he did cause a witness to come from Chicago to prove up his damages, the said Charles E. Norton before referred to, who stated that at a settlement between the parties in the spring of 1857, in June, there was a balance struck between them in favor of this defendant for the sum of eight hundred

dollars, and that he was mutually called to evidence the fact. Answer denies that the witness' statements were false, but declares that sum was the true and just balance due from complainant to defendant in June last. Answer denies that complainant was not indebted to defendant at the time of the commencement of the suit at law, but avers that complainant was indebted to him as stated by the witness, and that the same has not been paid, but is now due and unpaid. Answer denies that the time and manner of serving the summons was different from the usual course authorized by law, or that it was done in a manner to deceive complainant, but on the contrary, service was made in a plain, explanatory way, as before stated.

Answer denies that the least fraud or wrong has been practiced on the complainant, but on the contrary avers the proceedings to have been full and legal, as the law points out, and that the judgment in favor of this defendant and against complainant, is just and legal, and should be paid without delay.

Answer denies all unlawful combinations charged in the bill, etc., and asks that the injunction may be dissolved, and defendant allowed to proceed in collecting his judgment.

A general replication was filed to defendant's answer in proper time.

On the 14th day of May, A. D. 1858, the defendant moved to dissolve injunction, which on the 9th June the court allowed, and dismissed the bill.

To which decree of the court in dismissing said bill and dissolving the injunction, the complainant, by his solicitor, excepted.

Whereupon the complainant prayed an appeal to the Supreme Court, which was allowed.

The errors assigned are:

1st. The court erred in refusing to permit Michael Grant, William B. West, John Owens, Ethan J. Allen and Joel D. Harvey, severally to be examined by the complainant, as witnesses on the hearing of said cause.

2nd. The court erred in refusing to hear proper evidence offered by the complainant, on the hearing of said cause.

3rd. The court erred in dismissing complainant's bill.

4th. The court erred in rendering the decree aforesaid.

The above is a full abstract of the bill and answer, and if the statements in the bill be true, there can be no question, that the complainant is entitled to relief in equity.

It is said by the defendant's counsel, that the complainant cannot contradict the return of the officer to the summons in the suit at law, *Ranstead* v. *Owens*—that such return is conclusive upon him.

A record in some cases, as to some facts, is only *prima facie* evidence, and may be contradicted at law. In Connecticut, in an action on a judgment rendered in another State, evidence on the part of the defendant, that he had no legal notice of the suit and did not appear, was held admissible, though the record stated expressly that the defendant appeared and pleaded by attorney. *Aldrich* v. *McKinney*, 4 Conn. 380. So in New York in a similar case, where the record stated that the defendant appeared to the suit, it was held that such statement was mere *prima facie* evidence of appearance, and in an action on the judgment, the defendant might aver and prove that he did not appear. *Starbuck* v. *Murray*, 5 Wendell, 148.

We would think that the return of an officer to a writ should have, on principle, no greater force and effect, than a record, and that it should be only *prima facie* evidence of the fact stated, subject to be controverted at law, but the general rule as now established, is, as stated by appellee's counsel, but it must have its exceptions in equity at least.

Suppose A, brings an action against B, and the process is actually served on C, but returned as served on B, their resemblance being so great as to deceive the officer. A judgment having passed against B, by default in a court of law, and the term having expired, before he was informed of it, cannot B, seek and obtain relief in equity, by averring and proving, that the process was not in fact served upon him but upon C? Or suppose that it could be shown, that it was physically impossible for the officer to make the service at the time stated in his return, by reason of the fact that B, at the time of issuing the process, and up to and after its return by the officer, was in a foreign and distant State, and so not within the reach of the officer. Would it not be just and equitable, that a judgment by default obtained under such circumstances, and no chance to move in the court of law to set it aside, should be relieved against? It cannot be averred, that the judgment was the result of his culpable negligence, or that his title to relief is mixed with misconduct, gross or otherwise, on his part, and not being obnoxious to that objection, and coupled with the averment, that the claim is utterly false and fictitious on which the judgment was obtained, the door of such a court ought to fly open to admit him.

But the defendant answers, the remedy in such case, is by an action against the officer for a false return. Granted such a remedy is at hand, but is it a complete remedy, as full as a court of equity can give? Is it any satisfaction to the person thus situated, whose estate is swept from him by the execution issued on such a judgment, that he may sue the officer, and

recover damages, and run the risk of being beaten on the execution, finally? There is this remedy at law, but it is wholly inadequate, and in such case the powers of a court of equity ought to be successfully invoked. Courts of equity refusing to entertain such a case, would be the reproach, as they are now the admiration of mankind.

The doctrine is, as announced by the Supreme Court of the United States in the case of the *Marine Ins. Co. of Alexandria* v. *Hodgson*, 7 Cranch, 332, that " any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law ; or of which he might have availed himself at law, but was prevented by fraud or accident unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery." And this is the doctrine of all the books, elementary or otherwise—it is the principle universally recognized, and by this court. *Beams* .v. *Denham et al.*, 2 Scam. R. 58; *Wierich* v. *De Zoga*, 2 Gilm. R. 385.

It is a general and almost an universal principle, that there is no wrong without an adequate remedy. If a court of law, acting by general rules cannot supply it, a court of equity must by acting on the particular case.

It would be hard indeed, and a reproach to our institutions, if no court could afford an adequate remedy against the fraud and villainy, or mistake of an officer, who shall have returned process served which he in fact never served, and when the party did not appear to the action. In the cases we have cited above, the fact of appearance was contested at law, and successfully, the ground being that where there is no service and no appearance, the court has no jurisdiction of the person. This is a principle of natural justice and of universal application.

A judgment obtained without notice, and without appearance, is an injury to the rights of a party, for which he should have adequate remedy. If it does not exist at law, it must in equity.

That a court of law cannot afford such remedy, is certain. An action for a false return may be brought against the officer, who may in divers ways escape liability by the perverseness or partiality, or prejudice of the jury, or by his own insolvency and that of his sureties. A judgment against him under such circumstances, would be a poor equivalent for the loss of a valuable estate, sold to pay the judgment his fraud or mistake had caused.

No relief can be had by writ of error, for the record on its face shows no error—none by *audita querela*, for if in use, it would be inapplicable. That remedy proceeds upon the ground of the validity of the judgment, and gives relief upon some

matter of discharge subsequent to its rendition, as a release or payment. Nor is there any efficacy in the writ of error *coram nobis*, because at law, no averment can be made in the same action against the officer's return. The fact then being that a court of law can afford no adequate remedy, is the strongest of all reasons, and the very reason why an application should be made to a court of chancery. The injury of which the party here complains, is that an execution has issued upon a judgment against him, in a case of the existence of which he had no notice, and in which he never appeared. Who can doubt that it is unjust and unconscientious to enforce a judgment so obtained?

We think, in all cases, if a sheriff or other officer, by fraud and collusion with a party, or by mistake, makes a false return, a court of equity has full power and jurisdiction to interpose and give the appropriate relief, and to permit the party injured, so that the remedy may be effective, to aver against the truth of the return, and show it to be false, although it is a matter of record, and this will be going no further than the courts went in the cases cited from 4 Conn. 380, and 5 Wend. 148.

In the case before us, the facts are all denied by the answer, and the deputy sheriff, sworn as a witness for the defendant, testifies that he did serve the process, at the time of the date of the return, and it would require testimony to overthrow this, and here we come to a most important part of the case. If the testimony of the deputy sheriff is carefully examined, it will be discovered that it is not so plain as it should be. It will be observed, the complainant introduced as evidence on his part, the summons against him in favor of West. On that summons is a full return, to wit: " Served by reading to the within named Owen Owens, Oct. the 8th, 1857, and at the same time I delivered to said defendant a certified copy of the declaration on file."

Now the deputy sheriff swears on behalf of the defendant, that he received the summons in the case of *Ranstead* v. *Owens*, on the 5th day of October, and made the return on it, and the return was in accordance with the facts. At the time he served the papers, he told Owens that it was a separate affair from another paper he served on him at the same time.

On his cross-examination he states that at the time of serving the summons in favor of Ranstead, he had another summons against complainant in favor of West, and a certified copy of the declaration, which he gave complainant—it was a twenty days' summons, and the time of service had run out, and told complainant, he could do as he pleased about answering it—did not read the West summons to Owens—served but one summons on him on said 5th day of October, and in that Ranstead was plaintiff—gave complainant a certified copy of the declaration in

West's case, but did not read the summons—did not make such a return to the clerk of the court, and don't know whether there was any return on it or not—don't think he ever requested any one to make a return on it for him—was not there at any time after the fifth.

The record of the summons in the case of West shows it was read to the complainant on the 8th of October, and is so returned. How easy was it for this deputy to mislead the complainant as to these writs and process. He gave to complainant a copy of the declaration in West's case, and read the summons in the Ranstead case—how natural, the complainant knowing he owed West, and having a copy of the declaration in his hand, that he should suppose the summons read to him was in the same case. There were the names Ranstead and West in the same connection. There is a mistake somewhere. The deputy sheriff swears he did not read the West summons to complainant, yet his return, under his own hand and filed in the clerk's office, shows he did. He swears also that he was not with Owens after the 5th of October, yet his return on the West summons is of the 8th of October. This return, indorsed on the summons, was undoubtedly put there by mistake or inadvertence, or in fraud of the complainant. If he served but one summons on the complainant, as he says he served but one, it must have been the one in West's case, for serving him with a copy of the declaration without the summons also, would have availed nothing. The complainant's narrative about this, is quite natural, and impresses strongly the belief that it was just as he states it. At any rate, he might well have been misled from all the facts as they are now detailed. The answer of the defendant is so general, so evasive, so wanting in distinctness, so uncertain and so scornful of particulars, that we are disposed to place but a slight estimate upon it. It admits the transactions with complainant as he states them in the bill of complaint, but denies that they are all ever had between them, but on the contrary avers that he has negotiated loans for the complainant from time to time, without showing particulars—with whom, when, where and for what amounts, and on what terms—and how large were the sums of money complainant agreed to pay him for such negotiations—how large were the sums of money advanced to complainant—when, where, or what amount, and on what terms. How much time has he expended—how many days, weeks, months, and how much trouble of mind and body, and why troubled? in and about the business of complainant. How large is the amount due from complainant to him, and how did it accrue—where is the statement of the account, and the balance struck as alleged, and why was not some evidence of indebtedness taken of the complainant,

and why not give a bill of particulars? The circumstances sworn to by complainant in his bill, and the vague, indefinite, and unsatisfactory character of defendant's answer, abundantly testify that defendant's claim is false and fabricated.

We have now reached the point in the case which we think quite important—the decision of the court on the objection made by defendant to the introduction, by complainant, of parol proof, to make out his case, and the reasons therefor as given by the court. On the hearing, 9th June, the complainant offered to introduce parol evidence in support of his case, having given notice he would do so, on the 28th May preceding. The defendant objected to the introduction of such proof and the court sustained the objection, as appears by the bill of exceptions. The record recites: " The court sustained the said defendant's objection and refused to allow said witnesses to be sworn and testify in said cause, there being a general rule of court requiring parties who intend to offer parol proof on the trial of chancery causes, except such parol proof as is allowable by the chancery practice irrespective of the provisions of the act of February 12, 1849, to give notice of the same ten days previous to first day of the term. But such rule had never been entered upon the records of the court, but had been announced orally from time to time, during the progress of business in open court."

To this ruling the complainant excepted, and we are called upon to pronounce upon the validity and binding effect of such a rule.

By our chancery code, chapter 21, (Scates' Comp. 138,) the Circuit Courts in all causes of chancery jurisdiction must proceed according to the mode prescribed in that code, and where no provision is made by this chapter, according to the general usage and practice of courts of equity, or agreeably to such rules as may be established by those courts in that behalf. By the seventeenth section of the same chapter (ib. 140), it is provided that the judges of the Circuit Courts, in their respective circuits, may establish rules of proceeding in chancery, and make all needful orders and regulations, consistent with the practice of courts of chancery, in cases not provided for by law. These are all the authority the Circuit Courts as courts of chancery possess, to establish rules, except that inherent power all courts have to despatch their business, by the establishing and enforcing reasonable rules. By our chancery code, first section, where no provision is made by the chapter as to the mode of proceeding, it must be governed by the general usage and practices of courts of equity, or agreeably to such rules as those courts may establish.

Owens *v.* Ranstead.

It is only in cases not provided for by law that the power given by the 17th section can be exercised.

By a law passed Feb. 12, 1849 (Scates' Comp. 166,) it is provided that on the trial of any suit in chancery, the evidence on the part of either plaintiff or defendant may be given orally, under the same rules and regulations as evidence in cases at common law. This short act, effected an entire change in the mode of proceeding in courts of chancery. The ancient practice was, and still is in England, to present the evidence by depositions—oral evidence was in no case heard. The act of 1849, is certainly a great improvement on the old mode, since the evidence can be, and is all preserved by the court, or master, before whom the witnesses are examined and the witnesses subject to free and full cross-examination.

Such evidence, it will be seen, is to be received under the same rules and regulations as evidence in cases at common law. Can the courts limit and restrict this right given to suitors, by a rule unknown and unheard of as having ever been applied to cases at common law? We think not. By the rules and regulations of courts of common law, *no party* is required to notify his adversary of the names or number of his witnesses, or what particular facts he expects to establish by them. Each party has a perfect right to mask his own battery, and not expose it, until the day of trial is on. In criminal cases, by express statute, the prosecution is bound to give, before the trial, to the party indicted, a list of the witnesses intended to be sworn and examined, and they are those marked on the indictment, with such others as the prosecution may deem necessary. In all our practice, and it has not been limited, we have never heard or read of a rule of court, or a requirement of statutory law, of the character and purpose of the one under consideration. It is not, in our judgment, in conformity with any known rule of practice in the English chancery, or of other States having a chancery code, and it seems to us, in express violation of the act of 1849, and for its injustice should be condemned.

It is unjust in this, a party offering parol evidence, may not have obtained his knowledge of its existence until the very day of trial. Is he to be driven to the expense and suffer the delay of a continuance of the cause, in order to get in the proof, thus by such an arbitrary rule excluded, and which, if received, would determine the case, so soon as heard? The idea is preposterous. That a party should be required to know, ten days before the sitting of the court, that it would be necessary for him to use parol evidence on the hearing, and give notice to the opposite party, can be of no practical use, for he is not required to state in his notice, the names of the witnesses nor what he

will prove by them, or either of them. The only possible use, such a rule can be, is to apprise the opposite party, so that he may provide the same kind of testimony if he has it, or can get it manufactured.

But was there any such rule established by that court which suitors and counsel attending the court could, or were bound to notice ? We think not.

The acts and rulings and orders of a court can be established only by the record, though a rule may be proved to exist by immemorial usage of the court, which was never upon the record. Apart from this, a rule of court cannot rest in parol or in the breast of the judge—it must appear of record. Rules of court are understood to be orders made by a court having competent jurisdiction. They are either general or special— the former are the laws by which the practice of the court is governed—the latter are special orders made in particular cases. Disobedience to these is punished by judgment against the disobedient party, or by attachment for contempt, as the case may be.

Rules of practice, and such is the rule under consideration, are certain orders made by the courts, for the purpose of regulating the practice of members of the bar and others, which, as we have said, every court has an inherent power to prescribe, being only limited to their reasonableness, and conformity to constitutional or legislative enactments. Without this power it would be impossible to despatch business—delays would be interminable, and that is quite frequently, the object of one of the parties. Such rules the courts can change, modify or rescind, but while they are in force they must be applied to all cases falling within them. No discretion can be exercised as to their application, unless such discretion be authorized by the rules themselves. That rules of this character, of such importance, affecting so deeply the rights of suitors, should be written and recorded, is a proposition too plain for argument. Such rules have the force of law, hence the necessity of recording them, so that every one may read and know them. The Roman tyrant is justly stigmatized, who wrote his edicts in small characters, and placed them out of sight of the people, on high columns.

Every court must have stated rules to go by, but can they be said to be stated, when they are not recorded, and only occasionally referred to orally, in the progress of the business of the court ?

Rules of court regulating its practice, and affecting all the suitors in it, and their most important interests, ought, like the acts of the General Assembly, to have a reasonable publicity

given to them before they shall become obligatory, at least, by being entered upon the record, and should operate prospectively only. A rule locked up in the judge's breast, and only promulgated orally, as the business of the court progresses, has none of the constituents of a rule. It was not a written rule—it was not entered of record—it had no publicity, and was known only to some of the lawyers practicing in that court. The courts of this State, are, all of them, open to every licensed attorney of the State. One from a distant circuit appearing in a court of another circuit for the first time, would naturally inspect the order book to ascertain what rules the court had established, as there may be existing rules variant from those in his own immediate circuit, to which he must conform. Finding no rule of the character this is, and called to conduct a chancery case, what would be his dismay and discomfiture, when proposing under the act of 1849, to introduce parol evidence, to be met by the objection, that the rule of court requires notice of such intention to be given ten days before the term of the court! He modestly, replies, that he had carefully examined the order book, and could find no such rule, and as modestly insists, that by the act of 1849, oral evidence may be given under the same rules and regulations as evidence in cases at common law, and that in such cases, no notice is usual, necessary or required. But says the court, true, there is no such written rule on our records— none such has been made public, yet we have often orally, in the progress of our business, adverted to the existence of such a rule, and it must be enforced. Confounded, dismayed, and utterly discomfitted, the counsel and his client succumb, and a loss of thousands is the consequence, and the statute itself nullified.

We cannot consent, that a rule thus established—thus promulgated, shall have such potency. Common right and common sense is against it, and we do not hesitate to declare it invalid. It is no answer to say the complainant attempted to comply with the rule, by giving notice on the 28th May. It may have been the very moment his counsel first heard of the rule " orally pronounced in the progress of business," in another case. This cannot make against him. We condemn the rule as unjust, and as an effectual nullification of the act of 1849.

We would advise the Circuit Courts, and other courts having power to establish rules of practice, to enter them of record— to give them publicity in some proper mode, and generally, to make them prospective in their operation.

The effect of this ruling of the Circuit Court, was, to deprive the complainant of testimony he had a right to use, by which he might have established his whole case as set out in his bill

of complaint, and contradicted the testimony of the deputy sheriff, or explain the error into which he has evidently fallen. They might have proved fraud and contrivance between the deputy sheriff and Ranstead whom he had known for so many years —who was a negotiator of loans, and dealt in money—to get Allen, the former deputy, to give him the summons in Ranstead's case, as he had one in the case of West, which by mixing up, serving or not serving, shall so operate on the mind of the complainant, as to induce him to believe he was summoned only in the case of West. We cannot conjecture, what might have been proved, nor will we attempt to guess. It is sufficient, the ruling of the court has done the complainant great injustice. There is sufficient evidence already in the record, to satisfy us there is some mistake in this matter, some fraud perhaps, which demands further investigation, and we accordingly reverse the decree, dismissing the bill and dissolving the injunction, and revive the injunction, and remand the cause for further proceedings in conformity with this opinion.

*Decree reversed.*