CORDELIA HOEY, IN HER OWN RIGHT, AND AS ADMINISTRATRIX, ET AL., APPELLANTS, VS. THOMAS E. JACKSON, EXECUTOR, ETC., APPELLEE.

1. Fraud, accident and mistake are principal grounds upon which courts of equity act in granting relief against legal proceedings, and in relieving parties against judgments at law ; but, the party asking relief in such cases must show that he could not avail himself of such defense at law ; or, if such defense could have been made there, he was deprived of an opportunity of presenting the same without fault on his part, by the fraud or circumvention of the opposite party.

2. Where a party has been regularly served with process in a cause, and neglects to appear and defend the suit, but suffers judg-

542        SUPREME COURT.

Cordelia Hoey, Adm'x, v. T. E. Jackson, Ex'r,—Statement of Case.

ment to be taken by default, and he has not been prevented from making a defense by fraud or accident, unmixed with negligence on his part, a court of equity will not afford him any relief against the judgment.

Appeal from Circuit Court for Alachua county.

### STATEMENT.

Cordelia Hoey, in her own right, and as administratrix of Cason Cooper, deceased, and Charles Hoey, who joined in right of his wife, Cordelia, filed a bill in 1884 in the Circuit Court for Hillsborough county, against John Jackson. The essential features of this bill are, in substance, as follows: That in 1866, Cordelia Hoey, then Cordelia Cooper, purchased lot six (6) of block 62, according to the survey and map of the town of Tampa, for the sum of two hundred and fifty dollars of her own separate property, and the party from whom the purchase was made conveyed to her husband, Cason Cooper, lot four (4) of block 62 of said town, instead of said lot six (6) of block 62, as was intended. That at the time of the purchase said Cordelia and her husband, Cason Cooper, were placed in possession of said lot six (6) by the vendor, and that they occupied said lot as a home for many years. In 1872 the mistake in the description of said lot was discovered, and the vendor undertook to correct it by describing lot six (6), block 62, but a further mistake was made in referring to the map as made in 1854, which was not correct, the map being made in 1853. That Cason Cooper had died before the correction was made in 1872.

That the sheriff and *ex-officio* tax collector of Hills-borough county sold, on the 2d day of March, 1868, the east half of said lot six (6), block 62, and one W. E. Sweat became the purchaser, but that the sale was void for the following reasons : First. The assessment against Cason Cooper was illegal in this, that he was assessed upon two promissory notes for $5,000 at their full face value, when said notes were worthless. Second. The personal property of said Cooper was not first sold before resorting to the sale of the land. Third. The tax sale was not advertised the length of time required by law, nor did the advertisement contain the proper description of said lot, nor did the assessment contain a correct description of the premises. Fourth. Said sale was not conducted in accordance with law, and that respondent is charged in law with knowledge of all the foregoing facts. That in March, 1868, said sheriff and *ex-officio* tax collector executed and delivered to said respondent a deed attempting to convey to him the title to the said east half of lot six (6), block 62, but that said deed is null and void in law, because the sale of the lot of land sold was illegal and void, and the deed upon its face fails to show a compliance with the law. That having heard that Sweat had sold his interest in the lot under the tax sale to respondent, said Cordelia went to Tampa for the purpose of redeeming the lot from tax sale, and, seeing respondent, informed him that she had heard he intended to buy Sweat's interest as purchaser at the said tax sale, and he replied that he intended to buy it and hold on to the land if he could ; that she then warned

him not to buy the said lot, as it would certainly be
redeemed, and this was a short time, as she is in-
formed, before he bought said tax claim from Sweat.
A short time after hearing that respondent had pur-
chased Sweat's tax claim, said Cordelia and her hus-
band, Cason Cooper, obtained the necessary funds.
with which to redeem said lot from said tax sale, and
Cason being feeble in body, Cordelia took the money
to the store house of respondent, and upon entering
the store saw him, but seeing her, he went into the
back room of the store, and failed and refused to re-
turn into the store in order to avoid seeing her, but.
she charges that she went to respondents's store with
the necessary money to redeem the lot of land, and
with the purpose of redeeming it, or making a tender
of the money, but that respondent, knowing her pur-
pose, avoided seeing her because he did not want her
to redeem said lot, so that he could by his fraud and
deceit obtain title to the same against conscience and
the law of the land.

That within two or three days after she went to the
store of respondent to redeem said land, and within
the time limited by law for the redemption of lands.
sold for taxes, her husband, Cason Cooper, went to
said respondent and tendered to him the amount in
lawful currency of the United States, sufficient to re-
deem said lot of land, but respondent refused to ac-
cept the same, and the only reason given by him for
his refusal was that he had gotten hold of the land.

and intended to keep it ; and so complainants charge that respondent refused said tender for the purpose of defrauding said Cason Cooper and his wife, Cordelia, of their said lot of land.

Further, that the said Cason Cooper informed his wife, Cordelia, of what he had done, and upon this information it is charged that after the foregoing tender was made and refused, the said Cason Cooper sought legal advice from his attorney, and again saw said respondent and counted out to him in the presence of two witnesses an amount of money of lawful currency of the United States of America, sufficient to redeem said lot of land from said tax sale, and demanded of him a cancellation and delivery up of said deed to said lot of land executed by the said tax collector, and said respondent, without making any objection to the sufficiency of the money or quality of the same, refused to accept said tender unless the said Cooper would also then pay to respondent a store account then claimed to be due. That said Cooper then tated he would pay his store account as soon as he could, but that he wanted then to redeem his lot from taxes, and said respondent again refused to accept the same, and complainants charge that said respondent desiring to use the forms of law in furtherance of his unlawful purpose to defraud them of said lot of land, refused to deliver up and have cancelled said deed, and held the same, and still holds the same, to the injury of said oratrix.

35

That Cooper departed this life in January, 1871, intestate, leaving the said Cordelia his sole heir at law, and letters of administration were granted to her in 1871 on the estate of said decedent ; that all the debts of said estate that have been presented to her have been paid, and there remains nothing to be done by her as administratrix of said estate, except to obtain a final discharge.

That in furtherance of his design to defraud the said Cordelia of said lot of land, and to cast a cloud upon the title to the same, respondent, in May, 1871, caused the said tax deed obtained from the said tax collector to be recorded upon the records of deeds of said county, but he well knew that he had no right to said deed, and that the same was no evidence of title as between him and the said Cordelia. That said deed was recorded for the purpose of casting a cloud upon the title of Cordelia to said lot of land, and of defrauding her of said property. That in furtherance of his design to defraud complainant, Cordelia Hoey, of said land, respondent employed an attorney in reference to this matter, and the attorney so employed spoke to complainant, Charles Hoey, in 1872, and told him that his wife, Cordelia, formerly Cordelia Cooper, owed respondent and he would sue her, and that said complainant not knowing anything in reference to said indebtedness, and having the utmost confidence in the said attorney, and not wishing to have his wife sued then paid to the said attorney of respondent the sum of twenty-five dollars, and for which said attorney executed a receipt acknowledging the payment of said

sum of money from Charles Hoey on account of tax on house and lot, the said receipt bearing date May 2d, 1872. That said house and lot mentioned in the receipt are the same referred to in this bill, and which are the subject of this suit, and the tax mentioned is the same that was tendered to the said respondent as hereinbefore alleged, and that said Cordelia never owned any other house and lot, and never owed any tax on any other house and lot to respondent, and it is charged that he, for the purpose of defrauding complainants, had the said tax deed to said lot recorded, and at the same time was setting up through his said attorney the inconsistent claim of the tax due on the said house and lot.

That for the purpose of defrauding the said Cordelia of her said lot, respondent waited until the death of her husband, Cason Cooper, before resorting to the plan of defrauding her of her said property, because respondent well knew that the said Cooper would defeat any attempt on his part to obtain possession of said lot; that after being deprived by death of the advice and knowledge possessed by her said husband, respondent had his said tax deed recorded, and in August, 1873, instituted a suit of ejectment against the said Cordelia in her own right, and as administratrix of Cason Cooper, deceased, and her then husband, Charles Hoey, and their tenant, to dispossess them of said lot of land. That summons in said suit was served on the said defendants therein in August, 1873, but respondent well knew he had no right to said lot, and

resorted to the forms of law for the purpose of carrying out his scheme to defraud complainants of said lot of land.

Fearing that respondent would institute suit to get possession of said lot, the said Cordelia sought the advice of an attorney learned in the law, residing at Tampa, and upon expressing her fears to him in reference to said contemplated suit, he advised her to go home and rest contented, as he knew all the facts of her case, and that respondent could never get possession of her lot, and that he would attend to the matter and give attention to any suit that respondent might institute against her. That, relying upon said assurances, she returned to her home, and, being ignorant of the law and the procedure in the courts, thought she had done all that was necessary for her to do, and when she was served with the summons in said suit, she sent the copy to her said attorney, and rested contented, and thought that if her said attorney needed her presence he would inform her; but did not deem it necessary to go to court until advised to do so by her attorney. That nothing was done in said suit except filing the præcipe and issuing summons until in July, 1874, when the declaration was filed; that in October, 1874, a motion was made by attorney for respondent for judgment by default against the defendants therein, and although there was no appearance entered, and no plea filed therein, no judgment was entered on said motion. That on the

13th day of October, 1875, respondent, by imposing upon the court in its ignorance of the truth of the case, and knowing that he had no right to the same, obtained a judgment by default against the defendants therein for the possession of said lot, and imposing upon the court, respondent caused a jury to be empannelled, and as complainants are informed, introduced before said jury, as evidence of his right to possession of said lot, the said void tax deed, and that this was all the evidence before the jury, and that they, not knowing all the facts of said case, and not knowing that said deed was void, did render a verdict in favor of respondent for the possession of said lot of land, and $129.66 for damages, and judgment of court was entered in favor of respondent on said verdict for said lot and damages.

That in furtherance of his design to defraud the said Cordelia of her lot of land, and imposing upon the officers of the court, respondent in December, 1875, caused a writ of possession to be issued and placed in the hands of the sheriff of Hillsborough county, and said sheriff executed said writ on the 4th day of December, 1875, by ousting said Cordelia and her tenant, and putting said respondent into the possession of said lot.

It is then alleged that respondent from the inception to the termination of the suit and the execution of the writ of possession, fraudulently used the forms of law and imposed upon the officers of the court for

the purpose of injuring and defrauding said Cordelia of her said property, and that all the proceedings in said suit are absolutely void.

That the said Cordelia not hearing anything from her said attorney after the service of said summons on her, presumed that respondent had abandoned his suit, and that it was several months after the execution of the writ of possession that she learned respondent had obtained judgment in said suit. That when said suit of ejectment was instituted, and when the judgment therein was rendered, complainants' residence in Hillsborough county was very remote and inaccessible to Tampa, the county site, and that at said time, and until a very short time ago, the means of communication and transportation to and from Tampa were very poor, and complainants were in destitute circumstances financially. That complainant, Charles Hoey, was delicate and could not work long at a time, and that both were compelled to work in the field for an existence, and were without any means with which to buy a horse or conveyance to go to Tampa, and had to rely entirely upon the kindness of friends and neighbors who, on account of the sparcely settled condition of the country, were few, to get to Tampa, and that it was some three or four months after hearing of the said judgment before an opportunity presented itself for them to go to town; that upon going to town they were astonished to learn that their said attorney had several months before permanently removed from Tampa to Tallahassee, Florida, and there were no lawyers re-

siding at Tampa then, except the counsel of respondent, upon whom they felt they could rely, and upon an investigation they discovered that no appearance had been entered and no plea filed for defendants in said suit. That said Cordelia sought the advice of such friends as she could rely upon and was told by them that she could do nothing, as the judgment had already been entered against her, and not having the advice of an attorney skilled in the law, and being too poor to remain in Tampa, she returned home.

That as soon as she could make a little money she again went to Tampa, but could not get the advice of lawyers skilled in the law, except those who were attorneys for respondent, and the attorney who had represented him in said suit had at this time been appointed Circuit Judge, and her friends upon whom she relied for advice told her that she could then do nothing, and said judge could not hear the case on account of having been respondent's counsel, and relying upon this advice, and not being able to employ counsel away from home, she again returned home discouraged.

That when her husband, Cason Cooper, died, he left her a small amount of household furniture, besides the lot of land in controversy, and two promissory notes for $5,000, but the party who executed the notes became insolvent and she lost the entire amount of the notes, and when deprived of the lot of land by the fraud of respondent, she and her husband were left without any means of support. That a friend of

said Cordelia induced counsel to examine into her case, and being advised that it was best for her to consult with counsel she went to Tampa and conferred with her present counsel, and being advised that she might and ought to recover her said property, employed them to institute suit for this purpose, and that she would long since have commenced such proceedings had it not been for her poverty, caused by the fraud of said respondent.

That respondent is a shrewd land speculator, drives a hard bargain, and devoid of conscience, and although he knew that he had no right to said lot of land, yet he persisted in his efforts to defraud said Cordelia of the same, and step by step took advantage of her defenseless position, weakness and ignorance, and defrauded her of her said property.

That respondent could command a large sum of money and was litigious, and said Cordelia knew that she could not cope with him in her crippled condition, and as he had defeated her in every attempt to hold her property, she felt a great fear to go to law with such a man without some means to pay the expenses of litigation.

Further, that respondent has been in possession of said lot of land since December, 1875, and is still in possession of the same, collecting the rents, issues and profits from the same; that the rental value of the same is $25 per month, and that respondent is justly indebted to said Cordelia for said rental, and she prays that she may have judgment for the same; and

wishing to do equity, she now offers to pay whatever amount of taxes that was tendered and refused by respondent, less the $25 that has been paid as herein alleged, and any sum that respondent may be entitled to in equity after a true and correct balance is struck between them under the directions of the court.

The bill contains nine interrogatories addressed to the respondent, seeking by answers to specific questions information covering the allegations of the bill. The prayer is, that upon final hearing the judgment rendered in the said ejectment suit be set aside on account of the fraud practiced upon the court by respondent, and that the court hear and determine the respective equities alleged in the bill, and respondent be required to deliver up for cancellation the said tax deed exacted to him by the said sheriff and *ex-officio* tax collector of Hillsborough county to said lot of land, and that all cloud upon the title of complainants to the same on account of said tax deed be removed, and the pretended title of respondent be held for naught; also that a reference be had to a master to ascertain what amount respondent is due complainants on the rental for said lot, and for general relief and process.

This bill was demurred to on the grounds that it did not make such a case as entitles complainants to the relief prayed; that as appears by said bill, the respective rights of complainants and respondent under said tax deed, as well as the rights of respondent to the land as against complainants are "*res adjudi-*

*cata*," and complainants are estopped from setting up any claim to the said lot of land, that said Cordelia Hoey is a married woman, and does not sue by her next friend as required by law; and that it does not appear that complainants or either of them have any legal title to said lot of land.

The case was transferred to the Fifth Judicial Circuit on account of the disqualification of the Judge of the Sixth Circuit, and upon a hearing of the foregoing demurrer the same was sustained and the bill dismissed. From this decree an appeal has been taken.

Subsequent to the appeal, the appellee, John Jackson, died, and the suit has been revived here in the name of Thomas E. Jackson, executor of said decedent.

*Barron Phillips* for Appellants.

*Sparkman & Sparkman* for Appellee.

MABRY, J. :

Fraud, accident and mistake are principal grounds upon which courts of equity act in granting relief against legal proceedings, and in relieving parties against judgments at law. The party asking relief in a court of equity in such cases must show that he could not avail himself of such defense at law; or, if such defense could have been made there, he was deprived of an opportunity of presenting the same, without fault on his part, by the fraud or circumvention of the oppo-

site party. Chief-Justice Marshal formulates the rules as follows: "It may safely be said that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law; or of which he might have availed himself at law, but was prevented by fraud or accident unmixed with any fault or negligence in himself, or his agents, will justify an application to a court of chancery," Marine Insurance Co. vs. Hodgson, 7 Cranch, 332. This is the general rule, and it is essential for the complaining party in equity, where he relies upon matters of which he could have availed himself at law, to show the court that he has not been guilty of laches, and that he has been deprived of an opportunity of asserting his rights or making his defense at law through some accident, fraud or mistake not attributable to himself, as he had no right to ask a court of equity to relieve him from his own culpable negligence. Owens vs. Ramstead, 22 Ill., 161; C. & St. L. R. R. Co. vs. Holbrook, 92 Ill., 297; Barber vs. Rukeyser, 39 Wis., 590; C. & F. R. R. Co. vs. Titus, 27 N. J. (Eq.), 102; Floyd vs. Jayne, 6 Johns. Chy., 479; Shepard vs. Akers, 3 Tenn. Chy., 215; Dibble vs. Truluck, 12 Fla., 185; Budd vs. Long, 13 Fla., 288; Finegan vs. Mayor, 18 Fla., 127; Thornton vs. Campbell's Executor, 6 Fla., 546. An application of this rule to the allegations of the bill before us, the essential features of which are set out in the foregoing statement, will suf-

fice to dispose of this case. The facts alleged in the bill, if true, and had they been relied upon under proper plea in the ejectment suit, would have availed the defendants therein as a complete defense. As appears from the bill, an opportunity was given to make this defense, as a summons in said suit was regularly issued and properly served upon the defendants. In C. & St. L. R. R. Co. vs. Holbrook, *supra*, it was held that "where a party has been regularly served with process and neglects to appear and defend, and suffers judgment to be taken by default, and has not been prevented from making a defense by fraud or accident, unmixed with negligence on his part, a court of equity will not afford him any relief against the judgment, though it may be unjust.

Although it is repeatedly alleged in the bill that the respondent, John Jackson, with a fraudulent design, and in futherance of a fraudulent scheme on his part to·deprive complainant, Cordelia Hoey, of her lot of land, purchased a tax title to the same and resorted to the legal proceeding of ejectment to get possession thereof, yet there is nothing alleged to show that Jackson or his agents frandulently prevented her, or her husband and tenant, from making any and all proper defense to the suit when instituted. In order to maintain a standing in a court of equity she must have been prevented from making her defense by fraud, accident or mistake, unmixed with negligence on her part. It does not appear that Jackson did

anything to prevent her from going to court, or under-. took in any way to mislead or deceive her in reference· to making her defense.

The allegations in reference to the failure of the attorney to appear for defendants in the ejectment suit, are insufficient. In the first place, such a failure is in no way attributable to Jackson, and at most would be· the neglect of their own agent. Shepard vs. Akers, *supra.* But it does not appear that any attorney was consulted after suit was instituted, and the mere fact that copy of summons was sent to the attorney who· had previously been consulted, does not show sufficient diligence. It is not even alleged that the attorney received the copy of summons, or knew that the suit had been instituted.

The allegations of the bill fail to show, we think, any sufficient reason in law why complainants did not. make their defense at law, and for this reason, without examining the other objections made to the bill, we think the court was correct in dismissing the same. The decree of the Circuit Court is therefore affirmed,. and it is so ordered.