CAROLINE WOOD, Appellant, vs. THE CITY OF PEORIA et al.
Appellees.

*Opinion filed December 22, 1915.*

1. INJUNCTION—*when a court of equity may remove apparent lien of special assessment judgment.* Although a judgment confirming a special assessment recites the service upon a certain land owner of the process provided by the statute, so that the court apparently had jurisdiction to confirm the assessment, and the judgment is an apparent lien upon the land, yet if the judgment is, in fact, void for want of jurisdiction of the person of the land owner, a court of equity has power to remove the cloud if the land owner presents facts entitling her to relief.

2. SAME—*when a court of equity will relieve against judgment obtained by false return.* A judgment obtained by means of a false return by an officer without any notice to the defendant will be set aside by a court of equity, where third parties have not acquired rights by means of such return and there is equitable ground for granting the relief.

3. SPECIAL ASSESSMENTS—*effect of section 41 of the Local Improvement act as to conclusiveness of affidavit.* The provision of section 41 of the Local Improvement act that the report and affidavit therein provided for shall be conclusive evidence for the purpose of the proceeding is limited to the special assessment proceeding, and does not close every avenue of relief to a person who is injured by reason of the affidavit being false.

4. SAME—*what is not a contradiction of a finding by court.* A finding by the court in a special assessment proceeding that notices were mailed to the person paying the taxes the preceding year at his or her residence, "as shown by the assessment roll," is not contradicted by an allegation in a bill for an injunction that the place shown by the assessment roll was not, and never had been, the residence of the complainant.

5. SAME—*when collection of a special assessment may be enjoined.* Where a bill shows that the complainant has resided for more than twenty years on the property specially assessed for an improvement, that she never received any notice of the assessment proceeding, that the assessment is unjust, inequitable and wrongfully obtained and her property arbitrarily subdivided, contrary to law, and that she would have resisted the proceedings if she had had notice, a court of equity may enjoin the collection of the assessment though the record of the assessment proceeding shows

that a notice was mailed to complainant at the place of residence shown by the assessment roll, which, however, was not, and never had been, her residence.

6. SAME—*there is no equitable obligation to pay a special assessment.* The levying of a special assessment under the Local Improvement act is purely statutory, and where a municipality attempts to create a charge upon property by that means the statute must be followed, as there is no equitable obligation of a property owner to pay such an assessment.

7. SAME—*what is equivalent to a false statement as to residence.* It is the duty of a superintendent of special assessments not only to examine the property assessed but to make diligent search for the residence of the owner; and if the owner has resided on the property for over twenty years, the giving of some other address in the assessment roll as the place of residence of the owner is equivalent to a false statement as to her residence.

APPEAL from the Circuit Court of Peoria county; the Hon. THEODORE N. GREEN, Judge, presiding.

ROBERT H. LOVETT, for appellant.

R. H. RADLEY, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The circuit court of Peoria county sustained a general demurrer of the appellees, the city of Peoria and the county treasurer of Peoria county, to the bill of the appellant, Caroline Wood, filed to enjoin the collection of the first two of ten installments of a special assessment, amounting to $1390.52, levied on her property, and to have the special assessment declared void. The bill was dismissed for want of equity and this appeal was taken.

The facts admitted by the demurrer, which the chancellor regarded as insufficient to entitle the complainant to equitable relief, are as follows: The complainant became the owner of the lands on which the special assessment was levied on February 19, 1892, and has occupied the lands,

and the house thereon, as her home ever since. The street number of her home was 1104 North Peoria street. In May, 1912, an ordinance was passed for the levy of a special assessment to pay for paving with a brick pavement Arcadia avenue, which lies a few feet north of complainant's lands but on which they do not abut. An assessment roll was filed in the county court on July 31, 1912, and a judgment confirming the assessment was entered on August 21, 1912. On November 15, 1913, an order was entered reciting that the improvement was completed in substantial conformity to the ordinance and that the amount assessed did not exceed the cost of the improvement. On the assessment roll the address of the complainant was given as 521 Fulton street, Peoria, and the affidavit of the superintendent of special assessments stated that notices were mailed to her at that place, but she never received them and never received any notice of the assessment proceedings. No notice was ever mailed to her at her address and she never knew of the proceedings until April, 1914, when she received two postal-card notices from the county treasurer which had been sent to 521 Fulton street and bore a notation that there was no such person there and never had been, and the notices stated that the warrant for the collection of the second installment of the assessment had been placed in the hands of the county treasurer. The complainant had paid the taxes on the lands ever since she owned them and the assessment roll gave her name as the one who paid the taxes. Annexed to the bill as exhibits were copies of the proceedings in the county court, and they were regular on their face. The bill alleged that the judgment confirming the special assessment against the complainant's property was unjust, inequitable and wrongfully obtained, that the assessment roll arbitrarily subdivided her homestead and property, contrary to law, and that if she had been informed she would have appeared in court and resisted the application for judgment.

The judgment recited the service upon the complainant of the process provided by the statute, so that the court apparently had jurisdiction to confirm the assessment and the assessment would be an apparent lien, but if the judgment was, in fact, void for want of jurisdiction over her person, a court of equity would remove the cloud if she presented facts entitling her to such relief. The bill showed a fatal defect in the manner of serving the process by sending it to a place where the complainant never resided, and she never obtained any knowledge of the proceedings against her property, either by service of process or in any manner. The assessment roll sworn to by the superintendent of special assessments stated that he had made careful examination of the books of the collector to ascertain who last paid the taxes on the parcels of land assessed and also made diligent search for the residence, respectively, of such person or persons named in the assessment roll, and that the report correctly stated the names of such person or persons and their residence as so ascertained, and his affidavit of mailing notices stated that they were mailed to the persons paying the taxes, at the residence of each as shown in the assessment roll. An admitted fact was that the complainant had resided upon her premises for twenty-three years, and it was the duty of the superintendent not only to examine the property in order to assess it, but diligent search for the residence of the owner would certainly have made him aware that the complainant lived there. In the case of *Wright* v. *Glos,* 264 Ill. 261, where a person was in possession of premises, it was considered the duty of a purchaser of land at a tax sale to know that such person resided on the property, and that a failure to ascertain the truth was equivalent to knowledge.

Counsel for appellees calls attention to section 41 of the Local Improvement act and insists that the provision of that section that the report and affidavit shall be conclusive evidence for the purpose of the proceeding precludes any

contradiction of a false affidavit. Whether that provision is effective for any purpose or not, it does not apply to this case for the reason that it is limited to the special assessment proceeding. The provision is that the report and affidavit shall be conclusive evidence for the purpose of the assessment proceeding, and the General Assembly did not intend to close every avenue to justice against an injured property owner by providing that an affidavit which might be false should be conclusively regarded as true. The finding of the court was that notices were mailed to the person or persons paying the taxes the preceding year at his or her residence as shown by the assessment roll. It was not a contradiction of that finding to allege and prove that the place shown by the assessment roll was not, and never had been, the residence of the complainant, and therefore the rule that a finding of fact by the court cannot be attacked collaterally unless the finding is impeached or contradicted by the record does not apply. If that rule has any relation to this case it shows that the complainant could have no remedy at law by resisting an application for the sale of her property to pay the assessment and that she was compelled to seek relief in equity. It has long been the settled rule of this State that a court of equity will relieve against the effects of a false return of an officer, and that a judgment obtained by means of such a return, without any notice to the defendant, will be set aside where third parties have not acquired rights on the faith of the return and there is equitable ground for granting the relief. Where a court has assumed jurisdiction of a defendant on the strength of a false return of service of process by an officer, if the judgment is inequitable and unjust it will be relieved against in equity. *Owens* v. *Ranstead,* 22 Ill. 161; *O'Conner* v. *Wilson,* 57 id. 226; *Hickey* v. *Stone,* 60 id. 458; *Davis* v. *Dresback,* 81 id. 393; *Cassidy* v. *Automatic Time Stamp Co.* 185 id. 431.

271 — 12

The levying of a special assessment under the Local Improvement act is purely statutory, and where a municipality attempts to create a charge upon property by that means the statute must be followed. . There is no equitable obligation of the property owner to pay such an assessment, so that it cannot be said that the complainant was equitably bound to assume and pay the charge against her property. The notice of the assessment was sent to a place where the complainant never resided, and her bill alleged that the assessment was unjust, inequitable and wrongfully obtained, that her property was arbitrarily subdivided, contrary to law, and that if she had known of the proceedings she would have appeared in court and resisted the same. This was sufficient to entitle her to equitable relief upon proof of the facts alleged, and the chancellor erred in sustaining the demurrer to her bill.

The decree is reversed and the cause is remanded, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*