THE ILLINOIS CENTRAL RAILROAD COMPANY

*v.*

WILLIAM HASKINS.

*Filed at Ottawa September 23, 1885.*

1. NEGLIGENCE — *a question of fact.* In an action against a railway company to recover for a personal injury, on the ground of negligence, the question whether the plaintiff, at the time of receiving the injury, was using due care or was grossly negligent, is not one of law for the court to determine, but one of fact to be ascertained by the jury, under all the evidence. The same may be said in respect to comparative negligence of the parties.

2. APPEAL—*reviewing the facts.* Where the evidence in a cause tends to prove the existence of a given fact or state of facts, and they have been passed upon by a jury in a civil suit, their finding, unless set aside by the trial court or Appellate Court, is conclusive upon this court; and, in that regard, it is wholly immaterial whether this court thinks such finding is in accordance with the weight of evidence or not.

3. WITNESS—*credibility—how affected by his relations to the parties— as, employer and employe.* In an action against a railway company for negligence, the jury, in determining what weight to give the testimony of a witness for the defendant, may take into consideration the fact that the relation of employer and employe exists between the company and the witness, and from this, and his manner of testifying, judge whether he is apparently influenced by such relation, and to what extent.

4. In this case, the court was asked to instruct the jury, "that while they are the sole judges of the credibility of witnesses, they have no right to disregard the testimony of an unimpeached witness sworn on behalf of the defendant, simply because such witness is or was an employe of defendant,"—to which the court added: "But the relation of any witness to a party to the suit, such as employe, is a matter proper for the consideration of the jury, in the light of all the evidence, and if, after such consideration, it does not appear that the testimony of the witness has been influenced by such relation, then it should be disregarded. What influence, if any, such relation may have had on the testimony of any witness is to be estimated by the jury, in the light of all the evidence:" *Held,* that although the instruction as asked was proper, there was no error in the modification.

5. INSTRUCTION—*as ignoring the question of comparative negligence.* The court can not be said to have ignored the question of comparative negligence in an action involving the same, when no instruction is asked by either side upon that question. There is no error in giving an instruction for the plaintiff, stating the law correctly,·merely because it ignores the question of comparative negligence. The case of *Chicago and Northwestern Railway Co.* v. *Dimick,* 96 Ill. 42; does not hold that it is error to give such an instruction.

6. SAME—*whether presented within the time prescribed by a rule of court—presumption as to the existence of the rule.* Where the bill of exceptions shows that an instruction was refused because not presented within the time required by the rule of practice in such court,—that is, before the commencement of the closing address to the jury,—in the absence of any showing to the contrary in the bill of exceptions, it will be presumed there was such a rule of court, in writing, duly published and spread upon the records, and that the instruction was therefore properly refused.

7. BILL OF EXCEPTIONS—*what should be preserved therein—as, where an instruction is refused because not presented in time, under a rule of court.* If a rule of court requiring all instructions to be handed to the court before the commencement of the closing address to the jury, provides for any discretion in the court, and there is any reason why such discretion should have been exercised and an instruction given, though not presented in apt time, these reasons, as well as the rule itself, should be set out in the bill of exceptions, to enable this court to pass upon them.

8. RULE OF COURT—*requisites to validity.* To make a rule of court valid and obligatory upon suitors, it must be in writing, and spread upon the records of the court, and reasonable publicity should be given to it. When this is done, no discretion can be exercised as to its application, unless allowed by the rule itself. Courts have the power to make such rules when they do not conflict with any statute.

Appeal from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of La Salle county; the Hon. George W. Stipp, Judge, presiding.

Mr. B. F. Ayer, and Mr. G. S. Eldridge, for the appellant.

Messrs. Duncan & O'Connor, for the appellee.

Mr. Justice Tunnicliff delivered the opinion of the Court:

The appellee recovered a judgment against appellant, in the La Salle circuit court, for $7000, for the loss of an arm, and other injuries, sustained by him in consequence of being struck by a car under appellant's control, while the same was being transferred from one track to another by means of a "running" or "flying" switch. The circuit court overruled a motion for a new trial, and rendered judgment on the verdict, which was affirmed by the Appellate Court for the Second District, and the railroad company has appealed the case to this court.

Appellee was in the habit of shipping sand over appellant's road every few days, and of applying to the yard-master for a car for that purpose. On the day of the accident he went to see the yard-master to obtain a car, and found him near the south end of the yard, which is several hundred feet long from north to south, and along which, running parallel, are four tracks, and connected by switches in the south as well as north part of the yard. The yard-master was near an engine with which he was about to make the "running switch," for the purpose of placing the car which struck appellee, upon the west track, from the south part of the yard. The yard-master, anticipating the wishes of Haskins, (appellee,) notified him, on his approach, where his car was, and pointed it out, which was some two hundred or three hundred feet north from where Haskins and the yard-master then were, and in the same direction which the

west track runs, upon which the car was to be thrown. The yard-master testifies that when he informed Haskins where his car was, he told him to "look out," and that Haskins replied, "all right, my boy." There is some conflict in the evidence as to whether this was said just at that time or just as Haskins was struck; but there seems to be no question that the yard-master knew they were about to make this "flying switch," and throw the car upon the track along or near which Haskins would be likely to go to reach his car. The engine with the car attached, had, in fact, started south to make the necessary run north to accomplish this "flying switch;" that he gave no express warning to Haskins that it was about to be made, and if in time, the latter did not understand what he meant by the words, "look out," and no one was placed upon the switched car, or ahead of it, to warn any one of its approach or danger, nor were any other precautions taken for the safety of those who might be upon the track along which the car was thrown. Haskins was walking on or near this track, toward his car, when struck by the one thus switched, which was moving north in the same direction he was going, at the rate of about five miles per hour. There was a sidewalk on the west side of the track on which Haskins was walking, and had he taken and continued upon that walk he would not have been hurt. Haskins was going to his car to see if it was in readiness to receive the sand he was intending to ship in it, and to assist his teamster, who was near by with a wagon-load to put in the car.

The above are the main features in the case. There are other matters of detail in the evidence and surroundings, bearing upon the question of care of the respective parties; but as a majority of the court are of opinion that there was some evidence tending to show that, under the circumstances, the appellee did use ordinary care and that the appellant did not, and as we are precluded, under the Appellate Court act, from determining whether that evidence was sufficient to warrant

the jury in finding the verdict they did, or not, it would serve no useful purpose for us to discuss the evidence further.

Counsel for appellant insist, that, conceding all the evidence shows or tends to show, the verdict of the jury is contrary to law, and that upon the incontrovertible facts the evidence utterly fails to show a right of recovery. There was certainly a controversy upon each side as to what facts the evidence established. Appellee contended that it showed that he was using ordinary care when he received the injury, and that appellant's servants, in the making of this flying or running switch, were, at the same time, as disclosed by the evidence and surroundings, guilty of negligence and carelessness, whereas appellant's counsel claim, as we understand them, that, assuming appellee's own testimony as to how the injury came to be inflicted, to be true, and therefore "incontrovertible," it was apparent that he was himself guilty of such gross negligence and carelessness as to his own safety, that no recovery could be had or maintained unless the appellant's servants willfully and wantonly caused the injury, which is not claimed to have been the case. This position is not tenable, for the reason that whether he was using due care or was grossly negligent, is not a question of law to be determined by the court, but one of fact to be ascertained by the jury, under all the evidence, environments and attendant circumstances. *Pennsylvania Co.* v. *Frana,* 112 Ill. 398; *Pennsylvania Co.* v. *Conlan,* 101 id. 94; *Indianapolis and St. Louis Railroad Co.* v. *Morgenstern,* 106 id. 220; *Chicago and Alton Railroad Co.* v. *Bonifield,* 104 id. 224. As was said in *Bonifield's case, supra*: "It is the long settled doctrine of this court that negligence is a fact, the finding of which is clearly within the province of the jury; and it is equally well settled that a question of comparative negligence is as clearly within its province. The legislature has deprived this court of the power of reviewing controverted facts passed upon by a jury. This power has been conferred upon the Appellate

Courts, and we have been deprived of its exercise. We are compelled to take them as found by those tribunals, and have no discretion in the matter. In this case it was a controverted fact whether the act of deceased in passing from the train at the time was slight negligence, and the negligence of the company in starting its train as it did, when compared with that of deceased, was gross. These facts have been found by the jury and the Appellate Court, and we have no right to disregard their finding." And in the case at bar it was purely a question of fact whether Haskins, having lawful business upon the yard and tracks of appellant, and going on or near to one of its tracks to reach the car that had been assigned him, the only engine at the time about the yard being upon a different track, was, in any degree, negligent, and if he was, whether his negligence was slight and that of appellant's servants in making the running switch in the manner and with the surroundings under which it was done, as compared with his, was gross; and these facts having been passed upon by the jury, and their finding approved by the trial court, and its judgment affirmed by the Appellate Court, we have no power to review their finding.

Counsel, to maintain the position that we should reverse the judgment below, if, in our opinion, the evidence that was not disputed or controverted established such a state of facts as did not authorize a recovery, cite the case of *Missouri Furnace Co.* v. *Abend,* 107 Ill. 44, *Paddon et al.* v. *People's Insurance Co.* id. 196, and *Fitch* v. *Johnson,* 104 id. 111.

In the *Missouri Furnace Co. case,* the opinion states that "it will be assumed that whatever the evidence tends to prove was found in favor of the plaintiff, and that finding, under the Practice act, is, of course, conclusive on this court. It is said, however, there is an entire want of evidence to sustain the averment of the declaration that deceased 'used due care and diligence' for his personal safety, and that this defect is fatal to the present recovery," and the court thereupon

examined the record, and found that "there were circum-
stances tending to show that deceased observed ordinary care,
and that was sufficient to warrant the giving of the instruc-
tions,"—and that question was pursued no further.

In *Paddon* v. *Insurance Co.*, the court, after stating that
"where an Appellate Court fails to recite in their judgment
they found the facts different from what they were found by
the trial court, it will be understood the affirmance of the
judgment implies a finding of the facts the same way," adds:
"Were it true, as counsel insist it is, the facts of this case are
uncontroverted, it would then be a question of law whether,
on the facts appearing from the record, plaintiff would be
entitled to recover. That question, on the authority of *Good-
rich* v. *Lincoln*, 93 Ill. 360, would be open for consideration
in this court, without the trial court being asked to instruct
*itself* how to find as to the law of the case." By referring to
the case of *Goodrich* v. *Lincoln, supra,* it will be found that
the facts were admitted, and only questions of law arising
therefrom were presented for the consideration of the court.
The court say: "There is no controversy here in regard to
the facts, and this may be taken as obviating the necessity
of a special finding of facts by the Appellate Court."

In *Fitch* v. *Johnson, supra,* the case had been tried by the
court without a jury, and no proposition of law had been, in
writing, submitted to the court for its opinion, and to be writ-
ten upon as "held" or "refused," etc., as provided for in
the statute. After commenting upon this omission, the court
proceeds to say: "Indeed, no act or ruling of the court which
we are permitted to consider is claimed by appellant's coun-
sel to be erroneous, except the rendering of the judgment,
and even that claim, so far as it is based upon the insuffi-
ciency of the evidence, we are not, as we have already seen,
permitted to consider; but in so far as it is based upon the
legal hypothesis that, *admitting the facts charged in the decla-
ration* to be true, there is no right of recovery, we are. If,

conceding the facts to be true in manner and form *as charged in the declaration,* there is in law no right of recovery, then the circuit court erred in rendering the judgment, and that error not having been corrected in the Appellate Court, may be corrected here; and whether such error exists, in fact, is directly presented by appellant's motion in arrest of judgment." In this case there is no claim but that the declaration is sufficient. In fact, no motion was made in arrest of judgment for that cause or any other. There was no agreement as to the facts, and no special finding regarding the same by the Appellate Court.

These cases do not, therefore, sustain the conclusions attempted to be drawn from them by appellant's counsel, but, on the contrary, confirm the doctrine that where the evidence and circumstances surrounding a case tend to prove the existence of a given fact or state of facts, and have been passed upon by a jury in a civil suit, their finding, unless set aside by the trial court or the Appellate Court, is conclusive upon us, and it is wholly immaterial whether we think such finding is in accordance with the weight of evidence or not.

It is urged that the two first instructions given on behalf of appellee are erroneous, because predicated upon the hypothesis that plaintiff exercised due care to avoid the injury, whereas it is claimed it affirmatively appears that he was guilty of gross negligence. The instruction itself was correct, and it was for the jury to say, from the evidence, whether he had exercised due care or not. We have carefully examined all the instructions given on behalf of appellee, and are unable to perceive any objection to them.

It is said the court ignores the question of comparative negligence. The court was not asked to instruct upon that question by either side. As well might it be said that the court had erred in allowing the jury to take a case without instructions, where none had been asked by either party.

Counsel mistake the case of *Chicago and Northwestern Ry. Co.* v. *Dimick, Admr.* 96 Ill. 42, in supposing it was there held that where the evidence tended to show that the plaintiff is guilty of some negligence, so that the question of comparative negligence is involved, it was error to give instructions on the part of the plaintiff ignoring the question of comparative negligence. In that case the evidence did tend to show that plaintiff had been guilty of some negligence, but the first and eighth instructions given for him left entirely out of view whether he had been guilty of *any care* or caution whatever, and it was held that they were bad for that reason, and were not cured by defendant's instructions, even if they stated the law correctly, because the jury, not being judges of law, would be unable to tell a good instruction from a bad one.

It is urged that the court erred in modifying appellant's second and fifth instructions, and refusing to give its eighth. The second one, as asked, is as follows:

"The jury are instructed, that while they are the sole judges of the credibility of witnesses, they have no right to disregard the testimony of an unimpeached witness, sworn on behalf of the defendant, simply because such witness is or was an employe of defendant."

To which the court added: "But the relation of any witness to a party to the suit, such as employe, is a matter proper for the consideration of the jury, in the light of all the evidence; and if, after such consideration, it does not appear that the testimony of the witness has been influenced by such relation, then it should be disregarded. What influence, if any, such relation may have had on the testimony of any witness, is to be estimated by the jury in the light of all the evidence,"—and gave it as thus modified.

The fifth, as asked, read:

"The jury are instructed that it is their duty to try this suit as fairly and impartially as though it were a suit between

two private persons, and it is their duty to disregard all appeals made by counsel to them solely with a view of exciting their prejudice against the defendant because it is a railroad corporation, if any such have been made. That while counsel have a right to criticise the testimony of witnesses, they have no right to denounce the testimony of any witnesses as unworthy of credit, simply for the reason that such witnesses are or may have been in the employ of the defendant, in discharge of its business as a railroad corporation; and such appeals and denunciations, if any such have been made, should be entirely disregarded by the jury in arriving at a verdict in this case."

—Which, as asked, the court refused to give, but qualified the same by adding thereto the following: "It is the duty of the jury to consider the relation of the witnesses to the parties, as instructed in the second foregoing instruction,"—and then gave the instruction as modified.

Assuming that the instructions were good law as originally asked, and we think they were, we can not see that the modification was at all improper. It does not, in our judgment, stigmatize the witnesses, because they were employes of the company. It was certainly proper for the jury to consider the fact that the relation of employer and employe existed between the company and the witness, to see if the witness, from his manner of testifying, was apparently influenced by it. If he was not, then such relation should be disregarded, and if he was, then the jury would have the right to determine to what extent that relation had influenced his testimony. This is the substance and effect of the modification, and we think would be so understood by the jury.

The eighth instruction was in these words:

"The court instructs the jury, although the jury find, from the evidence, that the plaintiff, William Haskins, went to and upon the railroad yard of the defendant, in the city of

La Salle, for the purpose of seeing Mr. Joyce, the yard-master, to secure·a car in which to ship sand over the defendant's railroad, and if the jury so find that he was then notified by Joyce that his car was ready for him near the freight house, and he had no further business to transact with Joyce, it was his duty to pass from the tracks on to the cinder walk, if the jury find there was one on the west side of the west track, upon which he could walk with safety, and after he had reached the walk, if the jury find the evidence shows that he did pass from the track on to the cinder walk, it was his duty to exercise all reasonable care and prudence in walking alongside of the track, to keep far enough away from the track so as to avoid collision with a passing car, if the jury find, from the evidence, that the walk was such that he might have passed along, in the exercise of reasonable care, without having any collision with cars that might be passing upon the west track."

The reason assigned for not giving the instruction is thus set forth in the bill of exceptions: "Which said eighth instruction, asked for by the defendant, was refused by the court, because the same was not presented within the time required by the rule of practice in said court, to-wit, that all instructions shall be presented by the commencement of the closing address of plaintiff's counsel, said eighth instruction of defendant not being presented until within about a·minute of the close of said address, when there was not time to examine it without delaying the business of the court for that purpose, and it was therefore refused by the court without examination, · to the refusal of which said instruction, by the court, said defendant, by its counsel, then and there excepted."

Appellant's counsel say they can find no such rule among those appearing of record and officially published. We take this as a concession that there are rules of court appearing of record and officially published, and had the bill of exceptions stated that such was the case, and that this rule in ques-

tion was not among them, we would have had the right to infer that no such rule had been made and entered upon the record; but as the bill of exceptions shows that the court has a rule of practice requiring all instructions to be presented by the commencement of the closing address of plaintiff's counsel, we must presume, in the absence of anything to the contrary, and in favor of the regularity of judicial proceedings, that it was a written rule, and had been duly announced and spread upon the records. Had such not been the case, the judge would undoubtedly have incorporated the facts into the bill of exceptions, had he been requested to do so. To make such a rule valid and obligatory upon suitors, it must be in writing and spread upon the records of the court, and reasonable publicity should be given to it. When this is done, no discretion can be exercised as to its application, unless allowed by the rule itself. (*Owens* v. *Ranstead*, 22 Ill. 161.) The power of the court to make such rules, where they do not conflict with the statutes, has been frequently recognized and declared by this court. (*Owens* v. *Ranstead, supra; Prindeville* v. *The People*, 42 Ill. 217.) We see nothing in this refused instruction itself to indicate why it could not have been prepared and handed up with the others before the commencement of the closing argument in the case. If the rule admitted of any discretion in the court, and there was any reason why it should have been exercised and the instruction given, though not presented in apt time, these reasons, as well as the rule itself, should have been set out in the bill of exceptions, to enable this court to pass upon them. We are of opinion, therefore, that there was no error in refusing the instruction.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. Justice Scott: I dissent from this opinion and from the decision made.