## Henry Walthers v. Chicago & Northwestern Railway Company.

1. RAILROADS—*Duty to Persons Attempting to Mount Moving Trains at Other Places than Platform.*—A railroad company which has provided a reasonably safe platform near its depot, from which persons desiring to board its trains may do so safely and conveniently, has discharged its full duty in that regard, and is not bound to provide platforms at other points for the accommodation of persons who may attempt to board its trains while in motion, or to keep its right of way clear from cinders or other obstructions which may cause injury to such persons.

2. SAME—*Attempting to Mount a Moving Train, Negligence.*— Attempting to mount a moving train without the advice or consent of the railroad's agents, is negligence which will bar a recovery for injuries received in so doing.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Heard in this court at the October term, 1897. Affirmed. Opinion filed December 23, 1897.

Douthart & Garvy, attorneys for appellant.

It is negligence to make any erection so near the track that the slightest indiscretion on the part of the trainmen may put them in danger.  Chicago B. & Q. R. R. Co. v. Gregory, 58 Ill. 272; Rockford, Rock Island & St. L. R. R. v. Hillmer, 72 Ill. 235;  Dimick v. Chicago & N. W. Ry. Co., 80 Ill. 338 ; Chicago, B. & Q. R. R. Co. v. Lee, 87 Ill. 454.

It is for the jury to say what obstructions are unlawful. Herring v. Woodhull, 29 Ill. 95.

The obligation of care on the part of a railroad company, extends to all the accessories of its business, among which are stations, tracks and depots.   These must be constructed and arranged, and maintained with care, properly lighted when dark, and otherwise made safe and convenient for persons lawfully entering thereon for the transaction of business.   But in these as in other matters the company is only bound to use ordinary care except in favor of passengers.   Toledo, Wabash & Western R. R. v. Grush, 67 Ill. 262.

It is negligence not to remove ice from the track.  Flynn v. Wabash, St. L. & P. R. R. Co., 18 Ill. App. 235.

It is negligence for a company to construct a building too near the track.  Ill. C. R. R. v. Welch, 52 Ill. 183; Chicago, B. & Q. R. R. v. Gregory, 58 Ill. 272.

It is negligence to have a telegraph pole within nineteen inches of the body of a car.  Chicago & Iowa R. R. Co. v. Russell, 91 Ill. 298.

It is gross negligence to have a structure so near a track that cars touch it in passing.  Ill. & St. Louis R. R. Co. v. Whalen, 19 Ill. App. 116.

It is the duty of a railway company before departure of its trains from a station, to clear the way by the removal of freight trains so that passengers can approach the passenger train with safety.  Chicago & N. W. Ry. Co. v. Coss, 73 Ill. 394.

A railroad company is liable where passengers fall from an unguarded end of a station platform.  Jarvis v. Brooklyn El. R. Co. (N. Y.), 30 N. E. 1150; Pennsylvania Co. v. Marion, 23 N. E. 973 (Ind.)

A railroad company is bound to keep in safe condition for its passengers all that part of its station and platforms and tracks where passengers are expressly or impliedly invited to go. Keefe v. Boston & A. R. R. Co. (Mass.), 7 N. E. Rep. 878.

" It is the duty of every railroad company to provide a reasonably safe way of reaching and departing from their cars at all usual stations. " Wabash, St. L. & P. R. R. v. Rector, 104 Ill. 296; Chicago & A. R. R. Co. v. Byrum, 153 Ill. 134.

" It is the duty of a railroad company to provide safe platforms at depots and regular stopping places so that passengers can get on its trains with safety to their persons." Chicago & N. W. Ry. Co. v. Scates, 90 Ill. 593.

One who attempts to board a train moving from three to four miles an hour is not guilty of negligence *per se*. Distler v. Long Island R. R. Co., 45 N. E. Rep. 937.

It is not negligence *per se* for a person to get off a train in motion. Chicago & Alton R. R. v. Byrum, 153 Ill. 131.


A. W. PULVER, attorney for appellee; E. E. OSBORN and LLOYD W. BOWERS, of counsel.

Whether or not a passenger alighting from or getting on a moving train was guilty of such contributory negligence as would bar a recovery is a question of fact to be determined by the jury under all the attendant and surrounding circumstances. Chicago & A. R. R. Co. v. Byrum, 48 Ill. App. 41, affirmed in 153 Ill. 137; Chicago & A. R. R. Co. v. Bonifield, 104 Ill. 223; Ill. Cent. R. R. v. Haskins, 115 Ill. 300; Chicago & E. 1. R. R. v. O'Connor, 119 Ill. 586; Lake Shore & M. S. R. R. v. Brown, 123 Ill. 162.

Where a passenger gets upon a moving train the question of defendant's negligence and plaintiff's freedom from contributory negligence are questions of fact and should be submitted to the jury. Distler v. Long Island Ry.Co. (N.Y.), 45 N. E. Rep. 937.

An attempt to leave a moving train is not negligence *per se*. Louisville & Nash. Ry. Co. v. Crunk (Ind.), 21 N. E. Rep. 31.

The court properly instructed the jury for the defendant, because all the evidence introduced by the plaintiff showed that his injury was caused by his own gross negligence. Chicago & N. W. Ry. Co. v. Scates, 90 Ill. 586; Cicero & P. St. Ry. Co. v. Meixner, 160 Ill. 324; Spannagle v. Chicago & A. R. R. Co., 31 Ill. App. 460; Chicago, R. I. & P. Ry. Co. v. Koehler, 47 Ill. App. 147; Ohio & M. Ry. Co. v. Allender, 47 Ill. App. 484; Ward v. Chicago & N. W. Ry. Co., 165 Ill. 462; Missouri P. R. R. Co. v. Texas & P. R. Co., 36 Fed. Rep. 879; Hutchinson on Carriers, Sec. 641; Thompson's Carriers of Passengers, p. 267; Rorer on Railroads, p. 1110; Phillips v. Rensselaer & S. R. R. Co., 49 N. Y. 177; Knight v. Pontchartrain R. R. Co., 23 La. Ann. 462; Harvey v. Eastern R. R. Co., 116 Mass. 269; Hunter v. C. & S. V. R. Co., 112 N. Y. 371, 19 N. E. Rep. 820; Soloman v. R. R. Co., 103 N. Y. 437; Weeks v. New Orleans, S. F. & L. R. Co. (La.), 5 So. Rep. 72; McMurtray v. Louisville, N. O. & T. Ry. Co. (Miss.), 7 So. Rep. 401; Richmond & D. R. R. Co. v. Picklesheimer (Va.), 10 S. E. Rep. 44.

The act of the plaintiff in error in this case was in direct violation of the statute prohibiting the boarding of moving trains, and it is elementary that a person injured while engaged in a violation of law can not recover for injuries contributed to by such act. Par. 85, Chap. 114, Starr & Curtis' Revised Statutes; Chicago, R. I. & P. Ry. Co. v. Eininger, 114 Ill. 84.

Mr. Presiding Justice Adams delivered the opinion of the Court.

This was an action on the case by appellant against appellee. The declaration charges negligence on the part of appellant in not providing a safe and proper way for passengers to mount its train at Waukegan, in this State; in allowing a heap of ashes and other material to accumulate at and near the way by which passengers were to approach its train, and in not keeping its platform close to its depot, but about 150 feet distant therefrom, and near to and beside a heap of ashes and other material, without a platform or other means of entering or mounting its train. At

the close of the plaintiff's evidence, the court instructed the jury to find for the defendant, which they did, and judgment was entered on the verdict.

A map or plat was introduced in evidence, drawn to the scale of forty feet to the inch, which shows the situation of the tracks, platforms, contiguous streets, etc. Next east of the depot, as shown on the plat, is a plank platform; next east of that are the north and south-bound main tracks of appellee's road; next east of these main tracks is a platform, the east side, or about one-third of which, is planking, and the remainder, or west part, gravel. This platform, measured by the scale of the plat, is over 400 feet in length. Next east of the last mentioned platform, and separated from it by a narrow strip, as is usual between a platform and the track, is a track on which trains run from Waukegan to Chicago. The east platform was about level with the top of the rail. About ten feet south of the last mentioned platform was a pile of cinders which one of the witnesses, Chris. Walther, appellant's brother, testified came from the engines when they stopped to take water. The pile of cinders or ashes is described by the witnesses as being nearly a car length long, three to five feet wide, and about two and a half to three feet high, and near the track.

Washington street, an east and west street, which the witnesses describe as a hill, runs from the city down to and across the railway tracks, just south of the depot. The north line of Washington street is coincident with the south end of the east platform last above mentioned. West of the depot and intersecting Washington street is Spring street, which runs a little east of south, and west of north, but which for the purposes of the present case may be considered a north and south street. Measured by the scale, Washington street is about eight feet wide, and the distance from the north line of the east platform to the north line of Spring street is about one hundred feet. The evidence is that the train bound for Chicago usually started from Waukegan about 6:20 or 6:25 o'clock A. M.; that on the

morning in question, April 14, 1895, it had stood on the track, at the place where it started from, all of the previous night; that passengers took the train where it stood, and that it started at the usual time.

Appellant was a clerk in the employ of the J. V. Farwell Co. of Chicago, and had been in the habit of riding on appellee's train between Waukegan and Chicago, and usually took the 6:25 A. M. train from Waukegan. He had a commutation ticket. Appellant testified as follows:

" On the morning I was injured I was going to my work as usual. When I was about the center of the large hill there, a little way from the train, I heard the bell ring and I knew it was about time for the train to start, so it hurried me up. When I got down there the train had just started, and I went a little way south and waited until the step of the car got up to me and jumped on, got one foot up and was just in the act of swinging myself up on to the car when I struck this pile of cinders, and it dragged me under. The cinders caught my foot and threw me underneath the step of the car. I tried to roll out, but the pile of cinders was so steep I could not roll out, and something, the spring of the car, or the step, struck me and knocked me down again, and I turned over and got out, with the exception of one foot." He further testified that when the bell rang he was near the center of the hill; that he came down the south side of the street, meaning Washington street, and that the train was in motion when he got to the bottom of the hill; that he was about the east line of Spring street when the train started; also that he went along the side of the train some distance as it was moving before attempting to board it.

Chris. Walther testified on direct examination:

" I am plaintiff's brother and live at Waukegan. I was in the habit of taking the 6:20 or 6:25 train of the defendant every day for Chicago, and was with my brother when he was injured. We started that morning as usual and had almost reached the bottom of the hill when the bell rang, warning us that the train was about to start. The train

started to move before we arrived there. About the time
we got there alongside the train we were probably
half way between the coach, that is between the platforms.
I got on the hind platform of one coach and warned him to
get on the other platform, but I could not swear whether it
was the third, fourth or last coach, but it could not be more
than the third, possibly the second, from the front. I
jumped on the train safely and ran up the stairs. He started
to walk or run alongside of the train the same way the train
was going, and about the time the platform back of the one
I got on came along he took hold of the railing and put his
left foot, and took one step with the right foot and landed
in this pile of cinders. I watched him and saw him fall
down on top of the cinder pile," etc.

On cross-examination, he testified as follows: "We got
on the third or fourth car from the last, and I think there
were five cars in the train. The train started before we
got east of the east line of Spring street. I was probably
thirty feet north of the south line of Washington street
and my brother was ten or fifteen feet south of me. He
was a little south of Washington street when he tried to get
on. He got right on, though he might of taken two or
three steps. I did not measure the position of the cinders,
but state from the recollection of what I saw that morning.
We were about the center of the hill when the bell rang;
and the bell rang probably fifteen or twenty seconds before
it started. We ran the moment we heard the bell."

Julius C. Bittinger testified: "It was my custom to go
for a walk every morning, going down to the lake. This
morning I saw the boys about the center of the hill coming
down when the bell began to ring. They started to run
and one of them made the train easily. Henry tried to
make it. I should judge he was about the center of Wash-
ington street. The train was already in motion. Chris
jumped on the train and Henry followed. He got hold and
it seemed to me he was caught in the pile of cinders and
thrown off."

The questions are, whether appellee was guilty of negli-

gence as charged in the declaration, and, if so, whether the appellant was guilty of negligence which contributed to the injury. Was appellee negligent in not furnishing a reasonably safe way for passengers to board its trains, or in permitting a pile of cinders or ashes to accumulate and remain ten feet south of the platform? The question of the distance of the platform from the depot is not mentioned in appellant's argument, and must, therefore, be deemed abandoned.

It appears from the evidence, and is not disputed, that the platform at the place where the train in question stood before starting, was safe and convenient for the purpose of boarding the train, and the injury to the appellant is not attributed by him, or by any of his witnesses, to any defect in the platform. His complaint is that there was a pile of cinders about ten feet south of the platform, which, while he was attempting to board the moving train, occasioned the accident. Appellee having provided a reasonably safe platform near the depot, from which persons desiring to board its train might do so safely and conveniently, had discharged its full duty in that regard. It was not incumbent on appellee to provide a platform south of the depot for the accommodation of persons who might attempt to board its trains while in motion. As said by the court in Chicago & N. W. Ry. Co. v. Scates, 90 Ill. 586,593-4, "It is doubtless the duty of railroad companies to provide safe platforms at depots and regular stopping places, so that passengers can get on the trains with safety to their persons; but if a company was bound to furnish safe platforms for persons to get on a train when in motion, where must this be done? If a person has a right to get on a moving train at one place (not a station or stopping place), he has the same right anywhere along the line of the railroad, and if the company was bound to furnish platforms, the result would be that the entire track would have to be thus provided with platforms." The case in which this language was used, was a much stronger case for the plaintiff than is the present case for appellant; because in

that case the post against which the plaintiff collided, while
attempting to board the moving train, was directly oppo-
site the platform, while in the present case the obstruction
complained of was ten feet south of the platform.

We are of opinion that the evidence does not tend to
show that the appellee was negligent as averred in the
declaration, or at all negligent. This is sufficient to dis-
pose of the appeal, but inasmuch as counsel on both sides
have elaborately discussed the question of contributory
negligence on the part of appellant, we will not omit con-
sideration of that question. Appellant's action, in attempt-
ing to board the train while it was in motion, was purely
voluntary on his part. There was no invitation by any of
the crew of the train for him to board it while it was mov-
ing, nor any indication by any of them that he might do so,
nor is there a scintilla of evidence that any of them knew
that he was so attempting. We regard the case of C. &
N. W. Ry. Co. v. Scates, *supra*, as decisive of this case.

In Cicero & P. Street Ry. Co. v. Meixner, 160 Ill. 320,
the court say : " This court has held in a number of cases
that it is negligence for a passenger to get off a train, of
which the motive power is steam, while the cars are in
motion. Illinois Central Railroad Co. v. Lutz, 84 Ill. 598;
Ohio & Mississippi Railway Co. v. Stratton, 78 Ill. 88; Illi-
nois Central Railroad Co. v. Chambers, 71 Ill. 519; Illinois
Central Railroad Co. v. Slatton, 54 Ill. 133; Chicago & Alton
Railroad Co. v. Randolph, 53 Ill. 510. In Chicago &
Northwestern Railway Co. v. Scates, 90 Ill. 586, this court
said (p. 592): 'If it is to be regarded dangerous for a
passenger to get off a train of cars in motion, it is likewise
dangerous to get on a train when in motion. If a person is
guilty of such negligence in getting off a train of cars in
motion as will preclude a recovery for an injury received,
upon the same principle and for the same reason a person
injured in getting on a train of cars in motion, and in con-
sequence thereof, should be regarded guilty of such negli-
gence as will prevent a recovery.' The courts of other States
have adopted the same rule, viz., that it is negligence for

a passenger to alight from a moving train of cars the motive power of which is steam." See also Spannagle v. Chicago & A. R. R. Co., 31 App. 460; Ohio & M. Ry. Co. v. Allender, 47 Ill. 484; Mo. Pac. R. R. Co. v. Tex. & Pac. R. R. Co. (La.), 36 Fed. R. 879.

In the last case the court say : "Attempting to mount a moving train, without the advice and direction of the railroad's agents, is negligence, according to all respectable authorities, text books and adjudged cases." Phillips v. Rensselaer & S. R. R. Co., 49 N. Y. 177; Hunter et al. v. Cooperstown S. V. R. R. Co., 112 N. Y. 371; Harvey v. Eastern R. Co., 116 Mass. 269.

" The boarding or alighting from a moving railway train is generally held to be a negligent act *per se.*" Shearman & Redf. on Neg., 4th Ed., Sec. 101.

" Plaintiff will be chargeable with contributory negligence, if he runs the risk of an obvious and serious danger, merely to avoid inconvenience." Ib., Sec. 89.

We are of the opinion that fair-minded men of ordinary intelligence, could not, from the evidence, arrive at any reasonable conclusion other than that the appellant was guilty of negligence which contributed to the injury, and that the trial court properly instructed the jury to find for the appellee.

The judgment is affirmed.

Mr. Justice Windes, dissenting.

I agree with the majority of the court that this case should be affirmed because no negligence of appellee is shown, but can not assent to holding that as matter of law appellant was guilty of contributory negligence. That was a question of fact for the jury. Cumberland Val. R. R. Co. v. Maugans, 61 Md. 61, and cases cited; Beach on Contrib. Neg., 155; Fulks v. St. Louis & S. F. Ry. Co., 111 Mo. 339, and cases cited.

In the latter case the court says : " To attempt to get on or off a train in rapid motion would be an act of gross negligence; but it is generally held that the courts will not, as a matter of law, declare a person guilty of contributory

negligence who attempts to get on or off a train while it is moving slowly, especially at a platform. The question of contributory negligence in such cases is one of mixed law and fact, and should be determined by the jury, under the guide of proper instructions, in the light of all the attending circumstances. Such has been the repeated ruling of this and other courts."

In the case at bar the plaintiff testified "the train had just started" when he jumped on. On cross-examination he said : "I went along the side of the train some distance, as it was running very slow, but I don't know how slow." His brother, who got on the same train about the same time that plaintiff attempted to get on, testified : "I jumped on the train safely and ran up the stairs. He (plaintiff) started to walk or run alonside of the train the same way the train was going, and about the time the platform back of the one I got on came along, he took hold of the railing and put his left foot and took one step with the right foot, and landed in this pile of cinders."

Bittinger, a witness for plaintiff, testified : "They (plaintiff and his brother) started to run and one of them made the train easily. * * * The train was already in motion. Chris jumped on the train and Henry (the plaintiff) followed. * * * He (the plaintiff) got hold of the car and ran along with the car to get on the step, and got caught in the pile of cinders."

McCullough, a witness for plaintiff, testified : "I do not think the train was going faster than an ordinary horse car in Chicago. They slowed up at the switch about a block away to allow the switchman to get on."

It also appears that plaintiff was a young man, twenty seven years old at the time of the trial, three years after the accident, making him twenty-four years old at the time of the injury, and had been in the habit for several years previous, during the summer, of taking trains at this point.

In Chicago & A. R. R. Co. v. Bonifield, 104 Ill. 223, the Supreme Court, it being a case of a passenger alighting from a railway train in motion, said : "A train might be

barely in motion—moving so slowly as to be scarcely perceptible on close inspection—when to get off would be attended with no danger whatever.   To hold such an act, under such circumstances, gross negligence *per se*, would find no sanction in reason or justice.   It would violate the experience of all persons and be contrary to the reason of all men.   *   *   *   The value of a certain fact in evidence depends largely on the attendant circumstances.   An act which is gross negligence in one case, is not in another, owing to modifying circumstances.   *   *   *   But few acts can be said to be negligent *per se*."

So it may be said in the case at bar, the plaintiff being a young man, and the train running very slowly, his act in getting on the train might not be negligent *per se*, while it would have been such in the case of a person incumbered by baggage, or of an old or infirm person, or in one not in the habit of taking railroad trains.   The minds of reasonably fair-minded persons might differ as to whether he was negligent or not.   Illinois C. R. R. Co. v. Able, 59 Ill. 131; Illinois C. R. R. Co. v. Haskins, 115 Ill. 300; Chicago & E. I. R. R. Co. v. O'Connor, 119 Ill. 597; Lake S. & M. S. R. R. Co. v. Brown, 123 Ill. 174; Chicago & A. R. R. Co. v. Byrum, 153 Ill. 137.

In the Byrum case appellee, a *woman*, stepped from a slowly moving railway train which had gone about forty feet, was injured, and recovered.   The Supreme Court said : " Whether or not appellee was guilty of such contributory negligence in alighting from a moving train as would bar a recovery, was a question of fact to be determined by the jury under all the attendant and surrounding circumstances."

While I am inclined to the view that under all the circumstances in evidence, the plaintiff, as a matter of fact, was negligent, still I think that in the first instance at least, the question was one for a jury, and not the court.