Guiseppe Pusateri, Appellee, v. Chicago City Railway Company Appellant.

## Gen. No. 14,992.

1. NEGLIGENCE—*duty of traction company with respect to wagon upon its tracks.* However irritating the slowness of a wagon driver in getting out of the track may be, nevertheless, the car company, notwithstanding its superior right of way, is bound to exercise ordinary care not to run into the wagon and injure even the obstreperous driver; such, likewise, is its duty to another occupant of such wagon.

2. TRIAL—*propriety of permitting exhibition of injury to jury.* If the character of the injury is fully and graphically described, there could be no error assigned upon the denial by the court of the right to show the injury; nevertheless such a matter is so clearly within the

sound discretion of the trial court that unless the abuse of such discretion manifestly prejudiced the defendant, a reviewing court will not reverse.

3. INSTRUCTIONS—*what omission in, defining ordinary care, not erroneous.* Held, in view of other instructions given, that the omission of the word "ordinarily" before "prudent and reasonable person" and the omission of the phrase "under like circumstances," did not constitute error which called for reversal.

4. INSTRUCTIONS—*when use of particular phrase as to exercise of ordinary care not erroneous.* Held, that the use of the phrase "while in the exercise of ordinary care" was not erroneous, in view of the other instructions in the case, as referring only to the exact moment of the accident.

5. INSTRUCTIONS—*when upon interest of employe appropriate.* While the mere fact that a witness is an employe may not establish that he has an interest in the case, nevertheless, where, as in this case, the negligence, if any, of the defendant, is not personal but only that of a servant and the liability is due to the doctrine of *respondeat superior,* such a servant has a direct interest in the case, not only because a finding of not guilty would tend to re-establish him in his employer's confidence, but particularly because if the employer were found guilty, the servant would be answerable over to his master.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. ROBERT W. WRIGHT, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Affirmed. Opinion filed July 15, 1910. Rehearing denied July 26, 1910. *Certiorari* denied by Supreme Court (making opinion final).

JOHN E. KEHOE and C. LE ROY BROWN, for appellant; JOHN R. HARRINGTON, of counsel.

ROBERT F. KOLB, for appellee; EDWARD MAHER, of counsel.

MR. JUSTICE MACK delivered the opinion of the court.

On April 17, 1906, between 6:30 and 7 A. M. plaintiff, a fruit and vegetable peddler, was riding in his brother's one-horse canvas covered and glass front wagon, south on Indiana avenue, toward the district in which he peddled his wares, between 63rd and 65th streets. With him were his brother, the driver, two other brothers and a friend, all peddlers. The driver received a 5 cent fare for hauling them and their goods. One brother sat with the driver, another in the wagon

with the wares, plaintiff and the friend on the tail gate with their feet hanging out of the back end of the wagon, the plaintiff sitting on the west side. While the wagon was well filled, the driver could see through it and out of the back between the barrels and baskets, the space being about a foot wide. The driver and his brother sitting with him testified that they could see back clearly and that their view was unobstructed.

The wagon was being driven at a slow trot along the southbound track of defendant. It had pulled out occasionally to let a car pass, the last time at 43rd street. As to the exact facts of the accident, the evidence is conflicting.

Plaintiff's evidence tends to prove that at between 5 and 30 feet north of the north crosswalk of 50th street the driver turned east, intending to go to a house on the south side of 50th a few doors east of Indiana avenue. The car was then about 30 feet away and coming fast. The gong sounded only once. Plaintiff shouted "The car is coming" when the horses and three wheels were out of the track, but before the rear right wheel had cleared it. The car, without slackening its speed, struck the gate of the wagon while it was in this position, crushing plaintiff's leg and necessitating amputation.

Defendant's evidence tends to prove that the car was going only three to five miles an hour; that the gong was sounded vigorously and often for over a block while the car was following the wagon at a distance of about a car length; that after the wagon was partly out of the track, the driver unexpectedly turned to the south, back into the track; that as the car was then only five feet away the contact was inevitable and due solely to the driver's unexpected act.

Both plaintiff and his companion on the tail gate testified that there was no opportunity to pull in their legs as a movement would have thrown them down.

If defendant's version be correct, it would not be chargeable with negligence as it would not only have had no reason to anticipate the driver's act of turning in again but, moreover, no negligence of any kind could be charged against it. On the other hand, if plaintiff's version be correct, the jury would be fully justified in finding both that the car was not

managed with that degree of care which defendant owed to the plaintiff and that the plaintiff, knowing that the motorman had full knowledge of his position and of the difficulty in changing it, was not guilty of any contributory negligence. However irritating the slowness of a wagon driver in getting out of the track may be, nevertheless, the car company, notwithstanding its superior right of way, is bound to exercise ordinary care not to run into the wagon and injure even the obstreperous driver; *a fortiori* does it owe this duty to another occupant of the wagon.

Defendant urges not that the driver's negligence is to be imputed to plaintiff, but that plaintiff himself was guilty of contributory negligence, 1st, because he could not leave the exercise of ordinary care to the driver alone, 2nd, because it is a driver's duty to turn out and let a car pass, 3rd, because one who sees a car rapidly approaching, knowing that it will strike him unless stopped or slackened, must endeavor to get out of the way.

The second ground urged is, however, applicable only to drivers and not to one in plaintiff's position. The third is subject to the limitation that if the party in the track also knows that the car is under the control of the driver and that the latter has him in full view, while a jury might, a court cannot find him guilty of contributory negligence in not getting out of the way, when his only method of doing so apparently involved other dangers to him. As to the first reason, there is no question as to plaintiff's duty himself to exercise ordinary care and not to leave this to his driver; inasmuch, however, as the jury were justified in believing that the driver had every opportunity to see and in fact did see the car, in time to get out and also in believing that he heard the gong sounded for some time before the accident, the jury were further justified in refusing to consider plaintiff's failure to warn him and to urge him to get out sooner, as contributory negligence.

The case is in this respect totally unlike those cases in which a passenger who knows of an impending danger of which the driver is ignorant, takes no steps either to warn the

latter or to protect himself, relying entirely upon the possibility of the driver discovering the danger and avoiding it.

Without discussing the evidence in detail, we are of the opinion that it cannot be said by a reviewing court that the plaintiff has so clearly failed to prove by a preponderance of the evidence either the defendant's negligence or his own exercise of due care, as to justify a reversal.

Complaint is made of some of the instructions and of the admission of certain testimony and of the action of the court in permitting plaintiff to exhibit the stump. While the character of the injury was fully and graphically described and therefore no error could have been assigned on a denial by the court of the right to show the stump, nevertheless, matters of this kind are so clearly within the sound discretion of the trial court that only in case the abuse of such discretion manifestly prejudiced the defendant, would a reviewing court reverse the judgment. In our opinion, this exhibition, even though entirely unnecessary for the jury's enlightenment, did not tend to affect their determination of the question of liability. As the verdict of $12,250 was reduced to $10,000 on *remittitur,* a sum that is, under the circumstances, by no means excessive, it cannot be said to have affected defendant prejudicially in any respect.

Complaint is made of the following instructions given on behalf of plaintiff:

"2. The court instructs the jury that the words 'ordinary care,' wherever used in these instructions, mean, according to the law of the State of Illinois, that degree of care which a reasonably prudent or cautious person would take to avoid injury under like circumstances.

And the court further instructs the jury that the word 'negligence,' wherever used in these instructions, means, according to the law of the State of Illinois, either an omission to do something which a reasonable person guided by those ordinary considerations which ordinarily regulate human affairs would do, or 'negligence' is the doing of something which a prudent and reasonable person would not do.

And the court further instructs the jury that if they believe from the evidence that the plaintiff was injured, as

alleged in his declaration, while he was in the exercise of ordinary care, and if they further believe that his injury was caused by the negligence of the defendant, as charged in the declaration, then, under the law, it becomes the duty of the jury to find a verdict in favor of the plaintiff.

3. The court instructs the jury that if you believe from the evidence that Giuseppe Pusateri, plaintiff in this suit, was riding on the wagon, which said wagon was driven by Salvatore Pusateri, and that he was on the wagon at the invitation of Salvatore Pusateri, who was the driver, and that Giuseppe Pusateri had nothing to do with the driving, and did not control same, then the court instructs the jury that Giuseppe Pusateri, if he was in the exercise of ordinary care for his own safety, is not to be blamed with or charged for the negligence, if any, of Salvatore Pusateri, the driver; and if you further believe from the evidence that Giuseppe Pusateri, while in the exercise of ordinary care for his own safety, was injured by the negligence of the defendant, Chicago City Railway Company, and sustained injuries, all as alleged in the declaration, then it becomes your duty to find a verdict for the plaintiff, Giuseppe Pusateri.

4. The jury are instructed that the fact that any witness in the case is, or has been, in the employ of either the plaintiff or defendant, as well as the relations which exist between any witness and either party to the suit, and any interest a witness may have in the result of the suit, so far as the same may be shown by the evidence, may be considered by the jury in determining the weight which ought to be given to the testimony of such witness, taking the same in connection with all the other evidence in the case, and the facts and circumstances proven."

The specific objection to instruction No. 2 is in omitting in the second alternative definition of negligence, the limiting word "ordinarily" before "prudent and reasonable person." We cannot, however, assent to the contention that without this word, the jury might in this case apply the standard of the most prudent man. Inasmuch as the court had just defined to the jury ordinary care as that degree of care exercised by a reasonably prudent person under like circumstances, we cannot regard the omission of the phrase "under

like circumstances" in defining negligence, as prejudicial error. This definition of negligence by Baron Alderson has, moreover, been expressly approved by our Supreme Court in numerous cases. C., B. & Q. R. R. Co. v. Johnson, 103 Ill. 512, 521.

The first criticism of instruction No. 3 is the submission to the jury of the question as to whether or not plaintiff had anything to do with the driving and the control thereof. To the extent that the exercise of ordinary care for his own safety required him to warn the driver, he did, as a matter of law, have to do with the driving; but obviously this instruction was not intended to be and, in our judgment, could not fairly have been understood by the jury as in any way referring to this duty. The next clause in which the rule of non-imputability of the driver's negligence is expressly conditioned upon the exercise of ordinary care for his own safety, indicates clearly that the preceding clause referred only to a direct control in the sense that the driver was under his orders. Whether or not this was so was a question for the jury. The admission of plaintiff's attorney in his brief in this court, withdrawn on oral argument, that the payment of 5 cent fare in some way made the driver plaintiff's employe, cannot bind the plaintiff or this court. The evidence is clear that no relation of master and servant existed and that plaintiff was nothing but a passenger on his brother's wagon.

It is also urged against this and the preceding instruction that the words "while in the exercise of ordinary care" have reference to the exact moment of the injury and thereby exclude from consideration the question of plaintiff's negligence in permitting his legs to hang over for some time preceding the injury. In Village of Lockport v. Licht, 221 Ill. 35, the expression used was, not "while," but "if, at the time of the injury." As there used, this was held to mean "at the very moment of the injury." The expression used in the present case does not, however, expressly refer, as did that in the Licht case, to the time of the injury and cannot be fairly interpreted as equivalent to the clause "while in the exercise of ordinary care at the time of the injury." In our opinion,

"while" refers, not to a moment but to the entire time just preceding and during the accident. As the Supreme Court said in C. & A. R. R. Co. v. Fisher, 141 Ill. 614, 625:

"It is claimed that the instruction requires of the plaintiff the exercise of ordinary care at the particular point of time when the injury was received, only, and omits the requirement of care previous thereto and thereby excludes from consideration previous acts of negligence materially contributing to the injury. *The word 'while' means 'during the time of that,' and seems to necessarily imply some degree of continuance.* THE JURY COULD NOT REASONABLY HAVE REGARDED IT OTHERWISE THAN AS REFERRING TO THE WHOLE SERIES OF CIRCUMSTANCES INVOLVED IN THE ENTIRE TRANSACTION."

While the Supreme Court in the case of Bennett v. Chicago City Ry. Co., 243 Ill. 420, does not approve of the fourth instruction, nevertheless, in the final opinion after a rehearing, the expression used in the original opinion that "the instruction would be wrong in any case" was withdrawn. The court said:

"This instruction was given in Donley v. Dougherty, 174 Ill. 582, and it was there held, on the facts in that case, that the court did not commit substantial or reversible error in so doing. We are disposed to hold that the instruction is not accurate. Under some conditions this court might feel that it was so far misleading as to require a reversal of the judgment, but in the case at bar we think it is obvious that no harm resulted to appellant from its being given."

While the mere fact that a witness is an employe may not establish that he has an interest in the case, nevertheless, where, as in this case, the negligence, if any, of the defendant, is not personal but only that of a servant and the liability is due to the doctrine of *respondeat superior,* such a servant has a direct interest in the case, not only because a finding of not guilty would tend to re-establish him in his employer's confidence, but particularly because if the employer were found guilty, the servant would be answerable over to his master.

While this instruction does not clearly limit the consideration of the fact of present or past employment to those cases in which such an interest is shown, nevertheless, as the only employes who testified were those in charge of the car, we do not deem the error, if any, of such importance as to justify a reversal in this case. It is to be noted, too, that the case of I. C. R. R. Co. v. Haskins, 115 Ill. 300, is not referred to in the Bennett case. The trial court in that case modified an instruction reading:

"The jury are instructed, that while they are the sole judges of the credibility of witnesses, they have no right to disregard the testimony of an unimpeached witness, sworn on behalf of the defendant, simply because such witness is or was an employe of defendant,"
by adding:

"But the relation of any witness to a party to the suit, such as employe, is a matter proper for the consideration of the jury, in the light of all the evidence; and if, after such consideration, it does not appear that the testimony of the witness has been influenced by such relation, then it should be disregarded. What influence, if any, such relation may have had on the testimony of any witness, is to be estimated by the jury in the light of all the evidence."

This statement of the law has never been overruled.

During the direct examination of plaintiff's brother, the following occurred:

"Mr. Kolb: Q. But after you felt the car hit the wagon, just tell us what happened?

A. He says the wagon stopped on the other side, on the corner of the south side, he says, we got off and the car stopped, too, and the motorman was in the middle of the tracks, when he says, 'You must excuse me'—

Mr. Kehoe: I object to that and move that it be stricken out.

Objections overruled by the court; exceptions by defendant.

A. (continuing):—and he started to cry."

Defendant contends that this was in the nature of an

apology and implied that defendant was at fault, and that it should therefore have been stricken out; that the error was emphasized by the fact that plaintiff's counsel subsequently asked the motorman on cross examination whether he didn't say, "Excuse me, I couldn't stop the car," although an objection to this question was sustained.

Whether or not a statement of the cause of the accident immediately thereafter would have been admissible as part of the *res gestae,* we need not determine; the words "You must excuse me" are at best only an exclamation; they do not necessarily or even fairly imply an admission either of fault or of liability, but at the most, of participation in the accident and regret therefor. As the participation was not disputed, proof of the expression of regret could not have prejudiced this defendant.

*Affirmed.*