Adam H. Kulikowski, Appellee, v. North American Manufacturing Company and Thomas J. O'Brien, Sheriff. North American Manufacturing Company, Appellant.

Gen. No. 42,759.

204

Heard in the second division of this court for the first district at the October term, 1943. Opinion filed March 8, 1944.

JACK E. DWORK, HARRY G. FINS and DAVID F. SILVERZWEIG, all of Chicago, for appellant.

BUSSIAN & DEBOLT, of Chicago, for appellee.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Adam H. Kulikowski filed a complaint in chancery in the circuit court against North American Manufacturing Company and Thomas J. O'Brien, sheriff of Cook county, to set aside a judgment at law obtained against him by the North American Company January 22, 1942, in case No. 41–C–5487, for $15,732.41, and to enjoin the defendants from collecting the judgment, on the ground that the sheriff's return was false and untrue, that the judgment was wrongfully obtained without any want of diligence on plaintiff's part and that it would work injury and injustice to him if it were allowed to stand and be collected. The matter was referred to a master in chancery under a reference limited in time, and after a full hearing the master found that no service was had on plaintiff, that he had no knowledge of the pendency of the suit until after the judgment was entered, that he had a good and meritorious defense to the action of the North American Company, that no third-party rights had intervened, and he recommended that a decree be entered granting the principal relief prayed for in the complaint and that the costs of suit be assessed against the North American Company. Upon hearing of the exceptions to the master's report, the court entered a final decree, adopting and approving the findings of fact and conclusions of law made by the master, except the recommendation with respect to the assessment of

costs, and as to that the chancellor, with plaintiff's consent, assessed the costs against him and they were paid by him. The chancellor was also of the opinion that since no relief was sought against Thomas J. O'Brien, sheriff, except to enjoin him from collecting the judgment, and he was no longer a necessary party to the proceeding, he should be dismissed, and accordingly an order of dismissal as to him was entered by the chancellor. Defendant has taken an appeal from the decree, contending principally that the master's conclusion and the court's finding that Kulikowski was not served with summons is contrary to law and the evidence; that the master's report, not having been filed within the time specified in the order of reference as extended, is *coram non judice,* and that the chancellor's dismissal of the sheriff as a party defendant was made for the purpose of exonerating the sheriff of any fault, and was improper.

Preliminary to a discussion of the principal ground urged for reversal, a summary of the complaint in case No. 41–C–5487 will be helpful to an understanding of the issues underlying that proceeding. It appears that the North American Company was engaged in the business of manufacturing and marketing fluorescent lamps and fixtures. Early in November 1940 it employed Kulikowski for the purpose of carrying on an advertising campaign for the sale and distribution of its products, and upon Kulikowski's request the company allowed him to examine all its books and secret records to determine what part of the business was profitable and also to afford a basis for advertising which would bring the most advantageous results. It was alleged that Kulikowski, through persuasion and promises, gained the confidence of the company and agreed that he would not make public the secret information which he acquired from its books and records, nor enter into the business of manufacturing fluorescent lamps and fixtures for a period of three

years; that after the examination of its books and in violation of his agreement, Kulikowski betrayed the company by using the business secrets which he had obtained in confidence and entered the business of manufacturing and marketing fluorescent lamps and fixtures in close proximity to the company's plant. As a result of Kulikowski's alleged conduct the company filed suit at law on June 18, 1941, asking damages in the sum of $100,000 for breach of contract, faith and confidence. That suit was filed in the circuit court as No. 41–C–5487. On the same day the North American Company filed a suit in equity in the superior court as No. 41–S–9272 praying for an injunction against Kulikowski. The parties in both suits and the material facts alleged in the two complaints of the company are substantially the same, the only difference being that in the law action the company was seeking a judgment for damages, while in the equity proceeding it alleged that it had no remedy at law and was seeking an injunction.

The summonses in both suits were issued on the same day and were placed with the sheriff for service at the same time by attorneys who represented the company in both suits. Kulikowski's address appeared upon the summons in each case as 620 N. Michigan avenue, and the summonses were assigned to Deputy Sheriff Goldberg in whose territory that address is located. The master found that the deputy sheriff appeared at Kulikowski's office, 620 N. Michigan avenue, upon three different occasions but did not identify himself or state his business to the receptionist in charge of the office. Upon the first two visits he was informed that Kulikowski was not in and upon the third occasion was told that Kulikowski was in conference. The master further found that at the time these suits were instituted Kulikowski had an office at 620 N. Michigan avenue, Chicago, and from June 18 to July 12, 1941 he was at his office regularly

during business hours; that about July 1, 1941 the regular deputy transferred the summonses in both cases to Samuel Orzoff, another deputy, as a matter of accommodation to Goldberg, although Kulikowski's address was not in Orzoff's territory; that from July 12 to July 27, 1941 Kulikowski and the members of his immediate family were outside of the State, and in their absence Miss B. Callender, a maid who had been in the employ of the family for many years, was in charge of the household; that Orzoff was ultimately furnished the home address of Kulikowski at 237 E. Delaware place, an apartment building, which was not located in the territory assigned to him, and on July 18, 1941 he appeared at Kulikowski's home, where he talked to Miss Callender, informed her of his identity, and asked for Kulikowski.

The foregoing facts are undisputed. There is a sharp conflict, however, in the testimony with respect to the question of service of summons. The North American Company contends that Orzoff handed Miss Callender two summonses, each folded in four sections, one in the circuit court and another in the superior court case; that he told her they were summonses in suits by the company against Kulikowski; that he asked her name and she said "B. Callender, Maid"; that he wrote the name as given him, with the notation "7–18–41," on each of the original summonses; that theretofore when he was given the home address of Kulikowski "he made out a slip of paper . . . upon which he noted his name, the name of the defendant, his address at 237 East Delaware Avenue and attached the same to the summons in the superior court case," but did not make out a similar slip for the circuit court proceeding; that at the time of the service of the summonses upon Miss Callender he wrote upon this slip, "Miss B. Callender, Maid, 7–18–41"; that he then marked the original summonses in each of the cases in the same manner, and

upon his return to the sheriff's office he placed a copy of each of the summonses in one envelope, addressed the envelope to Mr. Adam H. Kulikowski at 237 E. Delaware place, put a three-cent stamp on the envelope, and mailed it personally by depositing same in the mail chute.

Kulikowski, on the other hand, contends that Orzoff asked Miss Callender to sign the slip which was attached to the superior court summons, that she signed "B. Callender," that the deputy then handed her the summons in the superior court case but did not give her any summons in the circuit court case; that Miss Callender placed the summons in the superior court case upon Kulikowski's dresser in his bedroom where she had placed all the mail which had been delivered for him during his absence from Chicago; that there also arrived by mail an envelope from the office of the sheriff of Cook county, which she put upon Kulikowski's dresser without opening it; that upon Kulikowski's return to the city on July 27, 1941 she directed his attention to the mail on his dresser, and particularly to the summons which had been served upon her; that he opened the envelope from the sheriff's office and found therein a copy of the superior court summons; that no circuit court summons or copy thereof was on his dresser nor was any such summons contained in the envelope which had been received from the sheriff's office; that on the following day he communicated with his lawyer and directed him to defend the superior court case; and that he had no knowledge of any action pending in the circuit court until May 26, 1942.

The master, in a most comprehensive report, set forth in detail the customary procedure in the sheriff's office with regard to the service of summonses as follows: Each deputy sheriff serves between 30 and 40 different writs per day and as many as 200 or 300 per month. When a summons is placed for service at the

sheriff's office, a clerk stamps the sheriff's number on the writ and then assigns the writ to the deputy in whose district the defendant is to be served. The summons is then entered on a ledger kept for that purpose, opposite the number which corresponds to the number on the writ. In this ledger are contained the sheriff's number, the court from which the summons was issued, the title of the case and the court number, the name of the attorney of record, the term of court in which the summons is returnable, and the deputy to whom the summons has been assigned. After the service of the summons, there are also entered upon this book, the person upon whom service was had, the date of service, and the date when summons was returned to the clerk of this court. The entries pertaining to the service of the writ are taken from the return appearing upon the original writ. There is also a small book for each deputy in which are entered for each writ assigned to him, the sheriff's number, the title of the case, the date of the writ and return day, the number of persons to be served, the sheriff's return, and the date of its final return to the clerk's files. Generally the original summons is left in the office of the sheriff in order to avoid the danger of having same lost or mislaid. Some deputies take the original summons with them although it is the request of the sheriff that they be left in the office for safekeeping. Usually there is a slip prepared, which is of the same color as the summons, that is, white for a summons in a circuit court case and yellow for a summons in a superior court case. These slips contain the name of the defendant and his address, as well as the name of the deputy sheriff. The deputy enters upon these slips the name of the person upon whom service was had and the slip is then pinned to the original summons and finds its way into the files of the court. These slips are used particularly in cases where there are a number of defendants to be served. There is no specific requirement that such slips be

made or be attached to the summonses. Each deputy sheriff is required to fill out, at the conclusion of the day's work, a daily report sheet, in which are set forth the sheriff's number, the court, the type of writ, the name of the defendant, where and how served, the miles traveled, the fees earned, and the total number of persons served. These sheets are kept by one of the clerks of the sheriff's office for a period of 30 days. Thereafter, they are placed in a cabinet kept for that purpose in the office of the sheriff of Cook county. Primarily, these sheets are used for the purpose of computing mileage in determining the fees to which the sheriff is entitled, but they serve also as a quick and ready reference for information with regard to the manner and time of service. Persons desiring to check on the manner and time of service on any writ may examine these daily report sheets, generally with the assistance and under the supervision of an employee of the sheriff's office.

The master found that in the instant case the usual procedure above set forth was followed with the following exceptions: A slip, yellow in color, was attached to the summons in the superior court case showing service upon B. Callender. The circuit court summons had no such slip attached to it. The daily report sheet for July 18, 1941, prepared by Deputy Orzoff, is missing and upon diligent search cannot be found, although his daily report sheets for every other day of the month of July 1941, are in their usual place. Deputy Orzoff testified that he had with him the original summonses in the two cases at the time of service upon B. Callender. However, the markings on the original summonses by him of the words "Miss. B. Callender, Maid, 7/18/41" appear to be written with a pencil other than the one marked on the slip in evidence herein. "I am of the opinion that the original summonses were left at the Sheriff's Office and marked later."

August 21, 1941 the North American Company, through its attorney, caused an order of default to be entered against Kulikowski in the circuit court case for failure to appear or file answer. No further action was taken against him in the circuit court case until January 22, 1942, at which time the company appeared by counsel in an ex parte hearing, waived trial by jury, submitted the issues to the court, and upon the testimony of an accountant, damages were assessed against Kulikowski and judgment entered in the sum of $15,732.41. No execution was ordered until April 6, 1942, after the term had passed. Execution was served on Kulikowski June 11, 1942, by Orzoff, to whom it had been transferred for service by the deputy in charge of that district in the same manner as the summonses were originally transferred.

The master found that H. Williams Hanmer, attorney for Kulikowski in the superior court case, appeared in that court a number of times upon certain motions relative to the injunction proceeding and frequently discussed the superior court case, both in and out of court, with Harry G. Fins, attorney of record for the North American Company in both actions; that Fins did not at any time disclose to Hanmer, prior to May 26, 1942, the fact that any action was pending in the circuit court against Kulikowski for money damages, nor did Fins disclose to the judge who was then hearing the superior court proceeding the fact that a suit against Kulikowski, arising out of the same subject matter, was pending in the circuit court or that a judgment had been rendered in that suit; nor was disclosure made to any of the judges of the circuit court of the pendency of the superior court suit, either at the time default was taken against Kulikowski or at the time judgment was finally rendered.

The master further found that Kulikowski has a good and meritorious defense to the actions in both the ciruit and superior court cases; that in the supe-

rior court he prosecuted his defense vigorously, and at the time of the making of the master's report there was pending in the superior court cause the North American Company's motion to dismiss the action against Kulikowski without prejudice, it having been the contention of the company that an injunction against him was no longer necessary because the lack of government priorities made it impossible for him to obtain material necessary for the manufacture of fluorescent lamps and fixtures; and that although the motion to dismiss without prejudice was being contested by Kulikowski's attorneys, it was later dismissed.

From the foregoing findings the master concluded that Miss Callender was on July 18, 1941 a servant in Kulikowski's family and therefore "a person of the family" within the provisions of the Practice Act; that Kulikowski in no way attempted to evade the service of summons or execution; that Orzoff did not serve Miss Callender any summons in circuit court case No. 41–C–5487; that he did not inform her of any action against Kulikowski by the North American Company in the circuit court; that he did not mail to Kulikowski a copy of the summons in the circuit court proceeding, and that neither Kulikowski nor his attorney had any knowledge of the pendency of that suit until May 26, 1942; and he recommended that a decree be entered in accordance with his findings and the relief prayed for in the complaint. The undisputed evidence adduced in support of the complaint was substantially as found by the master.

The only disputed questions of fact are whether Orzoff left with Miss Callender a copy of the summons in the circuit court case, whether he informed her of the contents of the summons in that proceeding and whether he mailed to Kulikowski a copy of the summons in an envelope with postage prepaid, to his home address in Chicago. Upon those issues Miss Callender testified

that on July 18, 1941 a man appeared at the residence and asked if Mr. Kulikowski was in; that she answered, "No, Mr. Kulikowski is in California"; that he gave her a folded paper and also a smaller bit of paper which he requested her to sign; that she signed "B. Callender," and she identified Orzoff as the man and said the superior court summons was the paper he gave her; that she remembered it was a yellow paper and she placed it on Kulikowski's dresser; that Orzoff did not leave any other paper with her and did not leave a copy of the summons in the circuit court case; that when Kulikowski returned home July 27, 1941 she had a conversation with him and he then went to his bedroom to get his mail.

Orzoff testified that he had been a deputy sheriff about 8 years and served from 200 to 300 summonses a month; that the circuit and superior court summonses were given him by Deputy Herman Goldberg after July 1, 1941; that when he first called at Kulikowski's home on July 18, 1941 a woman came to the door and he inquired whether Kulikowski was in and was advised that he was at the office; that Orzoff then showed his button or badge and said he had a summons for Kulikowski; that he took out the circuit and superior court summonses, put down the date of his call, July 18, 1941, asked the woman her name, to which she replied "B. Callender, Maid," that he wrote that down and then left. He did not testify that he left a summons with her or that he explained the contents of any summons to her. Orzoff further stated that he then went back to the sheriff's office, put a copy of the circuit and superior court summonses (he did not say where), and noted the date, July 18, 1941; that he addressed an envelope to Kulikowski, 237 E. Delaware place, but does not say in what city or state, put a three-cent stamp on the envelope and mailed it. When the master asked Orzoff to relate what had occurred on the day of the purported service of the summonses,

he testified that when Miss Callender came to the door
and he was informed that Kulikowski was not at home,
he took out his badge and said he was with the sheriff's
office and had a subpoena for Mr. Kulikowski; that ''I
gave her the circuit court summons and the superior
court summons. I said, 'May I have your name,
please?' She says 'B. Callender.' '' The master then
asked if that was all the conversation and Orzoff an-
swered: ''I asked her who she was and she said she
was the maid and when I heard that I flashed my but-
ton and said, 'I have a subpoena for Mr. Kulikowski,'
and I gave her the summons of the Circuit Court.''
The master next inquired whether that was all the con-
versation and Orzoff answered: ''Yes sir, and I was
on my way.'' The master then directly asked Orzoff
whether he read the contents of the summons to her
and Orzoff replied, ''I believe I did.'' The master
then asked Orzoff what he said to her and he answered:
''When I said: 'I have a summons for Mr. Kulikow-
ski,' I read off the name of the suit here. I says,
'North American—whatever it is there, is suing Mr.
Kulikowski' ''; Orzoff further stated that he repeated
this once for the superior court and once for the cir-
cuit court case. Orzoff did not testify that he read
the contents of the summons to her or that he explained
either summons or any part thereof, but merely stated
''I believe I did.'' There is nothing in his testimony
to indicate that he explained the contents of the writ
to Miss Callender. Orzoff's testimony is extremely
vague as to whether he gave Miss Callender a copy of
the circuit court summons. He definitely did not ex-
plain to her the contents thereof. On a comparison of
Orzoff's memorandum on the back of the circuit and
superior court summonses with the service slip pinned
to the superior court summons, it appears that the slip
was written with a different pencil from that used in
writing on the back of the summonses, and although
Orzoff wrote Miss Callender's name on both the slip

and the memorandum on the summonses in his own handwriting at the same time, on final examination near the end of the hearing he said he must have changed pencils.

It is significant, of course, that Kulikowski vigorously defended the superior court case which sought only an injunction, and did not defend the law action based upon the same allegations wherein a judgment was asked for $100,000. If he or his counsel had known of the pendency of the circuit court case it is inconceivable that they would have allowed a default and judgment for over $15,000 to be entered against Kulikowski. Where two summonses for the same party, dated the same day, were to be served at the same time, it is quite possible that the clerk could, in error, stamp both summonses, even though only one was served. That may well have happened in this instance. The possibility of such an error is emphasized by the fact that each deputy serves from 200 to 300 writs a month. Furthermore, it is a practice in the sheriff's office for each deputy to make out a daily report sheet showing all the writs served each day, and upon whom service was made. The evidence shows that all of Orzoff's daily report sheets for the month of July 1941 were found except the sheet for July 18, 1941. That sheet was missing and could not be found, although a number of persons having charge of the records in the sheriff's office endeavored to locate it. Those sheets are the only source of information from which a summons and the return thereon could be restored in case the original summons and the return thereof were lost. Furthermore, under the Practice Act both of these suits, predicated upon the same allegations of fact, could have been joined in one action. Nevertheless, two suits were started, differing only in the nature of the relief sought.

The master found and Mr. Fins admitted that he met Hanmer on a number of occasions, both in and out

of court, in connection with the superior court suit, and although Fins represented the North American Company in both proceedings he never informed Hanmer of the pendency of the circuit court action prior to May 26, 1942; nor did he apprise the circuit court at any time that another case was pending in the superior court based upon the same allegations, which was being defended by Kulikowski. There is the added circumstance that Fins did not prove up judgment until several months after default was taken and did not cause execution to issue until some months after judgment was entered. Fins takes the position that he was not obliged to divulge the information to Hanmer because, as he contends, Kulikowski is presumed to have known of the proceeding by reason of the purported service of summons. These observations are not made in criticism of Fins but to fortify the obvious probability that neither Kulikowski nor his attorney knew of the circuit court suit and neither would have allowed judgment in excess of $15,000 to be taken by default if they had been aware thereof.

As a general rule, any fact which renders it to be against good conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law or of which he might have availed himself at law but was prevented by fraud or accident unmixed with any fault or negligence in himself, would justify a court of equity to grant relief; and if a sheriff or other officer by fraud, accident or mistake makes a false return and by reason thereof a judgment by default is entered without notice to the defendant, a court of equity will set such judgment aside and give the defendant his day in court. The North American Company apparently concedes that where a sheriff or other officer has made a false return wrongfully or intentionally, or innocently by mistake, relief may be granted by a court of equity to the person injured, but it says, and cites cases which hold, that the

stability of judicial proceedings requires that the return of the officer made in due course of his official duty and under the sanction of his official oath, should not be set aside upon the uncorroborated testimony of the person on whom the process has been served, but only upon clear and satisfactory evidence. That is undoubtedly the general rule to be observed, but there are occasions where circumstances, disclosed through an exhaustive hearing, indicate that a sheriff or other officer has made a false return, whether wrongfully or intentionally or innocently by mistake, and in such cases the court should not hesitate to grant relief to the person injured. The master pointed out with particularity the various reasons supporting his conclusions that Kulikowski had not been served in the circuit court proceeding, and upon a careful examination of the record we think his findings are amply supported by the evidence. It is conceivable, of course, that where two summonses in two different courts are to be served at the same time in suits predicated upon the same subject matter, the deputy sheriff may well have been mistaken in believing that he served both summonses, whereas in fact only one was served, and we think that is precisely what happened in this instance. The reasons for that conclusion have already been indicated. Since Miss Callender and Orzoff were the only ones present when the summons in the circuit court case is alleged to have been served upon her, it would from the nature of things be impossible for any other person to throw light upon the subject, but we think her testimony is corroborated and supported by satisfactory evidence and by circumstances which make it seem highly improbable that summons in the circuit court proceeding was served upon Kulikowski.

The reviewing courts in this state recognize that when there are two suits between the same parties, summonses in which are to be served at the same time, there is the possibility that the officer making the serv-

ice of summons may make a mistake, and while serving only one summons make a return of service of both. The two leading cases in Illinois are *Owens v. Ranstead,* 22 Ill. 161, and *Hilt v. Heimberger,* 235 Ill. 235. In both cases the court had under consideration equity proceedings in which the facts and principles involved were similar to the case at bar. An examination of these cases discloses a differentiation between the rule enunciated in *Marnik v. Cusack,* 317 Ill. 362, wherein the court held that the stability of judicial proceedings requires that the return of an officer should not be set aside merely upon the uncorroborated testimony of the person on whom the process had been served, but only upon clear and satisfactory evidence, and a situation such as we find in this proceeding. In *Hilt v. Heimberger, supra,* the court reaffirmed the established rule that the return of an officer cannot ordinarily be contradicted, that the rule was founded on public policy for the protection of innocent persons in legal proceedings, but pointed out that there are cases where an exception should be made. ''The sheriff's return of service does not import absolute verity, but is only *prima facie* evidence of the truth of the matters therein stated.'' (Citing cases.) ''Where the rights of third persons have been acquired in good faith, the return of an officer showing the service of summons cannot be contradicted, but as against parties acquiring rights with notice of the facts the return is not conclusive. . . . In a proper case, a false return may be set aside in equity. . . . A mistake of fact resulting in the recovery of a judgment may be ground for the interposition of equity in enjoining or setting aside such judgment.'' The court then discussed a number of Illinois cases, including *Owens v. Ranstead, supra,* which was approved; and under similar circumstances, held that the actions of appellees and their counsel were ''in entire harmony with what they claim they understood as to the assumpsit suits and inconsistent

with any other theory," and concluded that on the record they had a meritorious defense to the actions in assumpsit which they had no opportunity to defend, and that such opportunity should be given where a judgment has been obtained by mistake. From a careful examination of the record we are convinced that the master's conclusions of fact, confirmed and adopted by the court, are supported by the evidence, and that Kulikowski should be entitled to interpose his defense against the action of the North American Company.

It is urged that because the master did not file his report within the time fixed by the order of reference, as extended, the court should not have accepted it. The reference was made June 12, 1942, and the order required the master to take testimony and report the same to the court with his conclusions of law and fact within 15 days thereafter. July 1, 1942 a subsequent order, *nunc pro tunc* as of June 25, 1942, extended the time for filing the report fifteen days or until July 16, 1942. The hearing before the master was completed July 3 and the cause was argued on July 8. Counsel argue that although the master thus had 8 days in which to reach his decision and file his report, he did not serve counsel with a copy of his report until September 3. The parties were thereafter allowed until September 14 to file objections. Objections were filed by counsel for the North American Company and the sheriff, but neither of them appeared to argue their objections, and thereafter on October 15 the master overruled the objections interposed and filed his report October 28, 1942. Between July 16 and October 28 no demand was made upon the master to render his report and no application was made to the court to compel the master to file it. It was apparently not until the North American Company learned that the master had found the issues adversely to it that any objection was made to the delay. In support of its contention that the report is *coram non judice,* counsel for the

North American Company say that they know of no Illinois case where the subject has been considered and cite several cases from other jurisdictions. However, Kulikowski's counsel call our attention to *Harding v. Harding,* 180 Ill. 481, in which similar contentions were made. The master's delay in the *Harding* case was over three years. Nevertheless the court quoted with approval the holding of the Appellate Court in that case and held that " 'It was a matter within the discretion of the court to receive and consider the master's report, although he had not conformed to the time fixed by the order. We see no error in this regard.' " In exercising his discretion to accept the master's report the chancellor in the case at bar evidently took into consideration that the time fixed by the order of reference and the extension of time were too short to enable the master to render his report on the record of almost 800 pages and 34 exhibits within the time allowed. Moreover, we take judicial notice of the fact that July 16 was substantially the end of the regular court year and that during vacation the circuit court judges, under their rules, hear only emergency matters, which do not include arguments on exceptions to masters' reports. Thereafter the court convened in September and the report was ultimately filed within a month. It is apparent from the record that no effort was made by North American Company's counsel to secure a filing within the time fixed by the order and that the instant objection was not raised until after it became apparent that the master's findings upon the principal issue were adverse to the North American Company. In *Harding v. Harding, supra,* the court under similar circumstances adopted the following observation from the opinion of the Appellate Court in that case: " 'If we are right in holding that the order of reference did not give sufficient time, and that appellant, by his conduct, waived the extension thereof by the master, then there was no

error in refusing to order the master to report the evidence to the court without conclusions. And especially is this true when we consider that appellant made no complaint to the chancellor until after it was apparent to him that the report of the master would not be satisfactory to appellant.'' If counsel were to prevail in their objections, it would require a rereference and rehearing of the entire matter, which would result in the production of the same evidence, and probably the same conclusions.

Lastly it is urged that the dismissal of the sheriff as a party defendant was improper. The sheriff was made a party to the proceeding so that it would be possible to enjoin him from enforcing the judgment by levying the outstanding execution. No other relief was prayed against him. While the case was pending the execution expired and it then became apparent that the judgment would be set aside, thus making the sheriff no longer a necessary party. When the court dismissed the sheriff from the proceeding he was present by counsel and does not complain of his dismissal. Accordingly, we think the court properly entered the order of dismissal.

From the foregoing considerations we have reached the conclusion that the decree of the circuit court should be affirmed, and it is so ordered.

*Decree affirmed.*

SCANLAN and SULLIVAN, JJ., concur.